**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-80981-CV-MIDDLEBROOKS

KATHERINE M. LASSEN, et al.,

      Plaintiffs,

v.

NFL PROPERTIES LLC, et al.,

      Defendants.

_____

## DEFENDANTS NFL PROPERTIES LLC AND NATIONAL FOOTBALL LEAGUE'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

   A.   The FAC Remains An Improper Shotgun Pleading. .......................................................... 5

   B.   The FAC Fails To Plausibly Allege Plaintiffs' Ownership Of The Asserted Marks Or The

   Requisite Likelihood Of Confusion. ...................................................................................... 7

      1.   Plaintiffs Fail To Plausibly Allege Ownership Of The Asserted Marks. ...................... 8

      3.   The FAC Also Fails To Allege The Requisite Likelihood Of Confusion. ................... 14

      4.   For The Same Reasons Set Forth Above, Plaintiffs' Claim For Violation Of Florida's

      Deceptive And Unfair Trade Practice Act Fails To State A Claim...................................... 16

   D.   Plaintiffs' Claims Are Barred By Plaintiffs' Delay In Bringing Suit. .............................. 16

   CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Co. v. Goetz,*
515 F.3d 156 (2d Cir. 2008)........................................................................9

*Aschcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................5

*Compton v. Fifth Ave. Ass'n, Inc.,*
7 F. Supp. 2d 1328 (M.D. Fla. 1998)..........................................9, 11, 12

*D.B.C. Corp. v. Nuctica Venezolana, C.A.,*
464 F. Supp. 3d 1323 (S.D. Fla. 2020) ...........................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003).........................................................................14, 15

*Goldberg v. Cuzcatlan Bevs., Inc.,*
250 B.R. 48 (S.D. Fla. 2001) ...........................................................9

*Kason Indus., Inc. v. Component Hardware Grp., Inc.,*
120 F.3d 1199 (11th Cir. 1997) ......................................................17

*La. Ath. Down on the Bayou, L.L.C. v. Bayou Bowl Ass'n,*
No. 11-303-BAJ-SCR, 2013 U.S. Dist. LEXIS 68582, 2013 WL 2102354
(M.D. La. May 14, 2013)..................................................12, 13, 15

*Marco's Franchising, LLC v. Marco's Italian Express, Inc.,*
No. 8:06-cv-00670-T-17-TGW, 2007 U.S. Dist. LEXIS 49211, 2007 WL
2028845 (M.D. Fla. July 9, 2007)........................................................16

*Marquez v. Amazon.com, Inc.,*
69 F.4th 1262 (11th Cir. 2003) .......................................................5

*Nat. Answers, Inc. v. SmithKline Beecham Corp.,*
529 F.3d 1325 (11th Cir. 2008) ................................................12, 16

*Pinnacle Advert. & Mktg. Grp. v. Pinnacle Advert. & Mktg. Grp., LLC,*
7 F.4th 989 (11th Cir. 2021) .........................................................17, 18, 19

*Quiller v. Barclays Am./Credit,*
727 F.2d 1067 (11th Cir. 1984) .......................................................17

ii

*Quiller v. Barclays Am./Credit,*
    764 F.2d 1400 (11th Cir. 1985) ..................................................................17

*Sclar v. OsteoMed, L.P.,*
    No. 17-23247-CIV-MORENO, 2018 U.S. Dist. LEXIS 11373, 2018 WL
    559137 (S.D. Fla. Jan. 24, 2018) ................................................................17

*Secret of the Islands, Inc. v. Hymans Seafood Co.,*
    No. 2:17-cv-342-BHH, 2019 U.S. Dist. LEXIS 29122, 2019 WL 917209
    (D.S.C. Feb. 25, 2019) ..........................................................................17, 20

*Tana v. Dantanna's,*
    611 F.3d 767 (11th Cir. 2010) ....................................................................8

*Vibe Micro, Inc. v. Shabanets,*
    878 F.3d 1291 (11th Cir. 2018) ..................................................................4

*Weiland v. Palm Beach Cnty. Sheriff's Off,*
    792 F.3d 1313 (11th Cir. 2015) ..................................................................4

*Weinacker v. Wahl Clipper Corp.,*
    No. 23-12782, 2024 U.S. App LEXIS 13069 (11th Cir. May 31, 2024)..................8

**Statutes**

15 U.S.C § 1114 ................................................................................7, 8

15 U.S.C § 1125 ............................................................................7, 8, 14

15 U.S.C § 1127 ..................................................................................*12*

Fla. Stat. § 95.11(3) ............................................................................17

**Other Authorities**

Fed. R. Civ. P. 8 ..............................................................................1, 4, 7

Fed. R. Civ. P. 12 ....................................................................... *passim*

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:11
    (4th ed. 2024) ....................................................................................17

Defendants NFL Properties LLC ("NFLP") and National Football League ("NFL") (collectively the "NFL Defendants") hereby move to dismiss Plaintiffs' First Amended Complaint ("FAC") as an improper shotgun pleading under Rule 8 and for failure to allege claims upon which relief can be granted pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

Victor I. Maitland ("Mr. Maitland") served as CEO and Executive Director of Defendant National Football League Alumni, Inc. ("NFL Alum") from 1977 to 1988, and passed away in 2019. According to the FAC, since 1989, the NFL Defendants, NFL Alum, the National Football Museum Inc. d/b/a Pro Football Hall of Fame ("PFHOF") and Haggar Clothing Co. ("Haggar") have been using trademarks allegedly created by Mr. Maitland, including a logo that Plaintiffs acknowledge was used by NFL Alum with permission from the NFL Defendants. As shown below, that logo is essentially a copy of the famous shield logo adopted by the NFL Defendants in 1941:

| NFL DEFENDANTS' LOGO | NFL ALUM LOGO |
| --- | --- |
|  |  |

The FAC also describes other purported trademarks that Defendants have used for the past thirty-six years for programs that honor and support former NFL players and charitable events.

Mr. Maitland knew about Defendants' activities. Indeed, according to the FAC, in 2001, NFL Alum proclaimed him a "LIFETIME HONORARY PROFESSIONAL MEMBER," and presented him with a certificate bearing the NFL Alum logo and describing the programs that Mr. Maitland developed and that NFL Alum continued to offer after his departure in 1988.

1

During his lifetime, Mr. Maitland **never** sought to enjoin or otherwise prevent Defendants from engaging in any of that conduct. Now, thirty-six years after Mr. Maitland left NFL Alum, his children have brought a host of claims based on a tortured reading of trademark law, and seek a permanent injunction, Defendants' profits, statutory damages, and attorneys' fees, among other relief, for that very same conduct.

Plaintiffs' FAC is fatally flawed and must be dismissed with prejudice for multiple reasons. First, despite this Court's prior *sua sponte* dismissal of the original complaint, the FAC remains an impermissible shotgun pleading.

Second, the FAC fails to state any claims, as it is based on a fundamental misunderstanding of trademark law. Plaintiffs appear to believe that trademark rights arise from an idea for a mark and entitle the individual who "invented" the mark to enforceable rights. They do not. Trademark rights arise from use of mark in commerce to act as a source identifier. The FAC does not plausibly allege that Mr. Maitland was personally using any of the alleged marks in commerce. To the contrary, the FAC alleges that the marks at issue were used by NFL Alum, and that the NFL Alum logo was used with permission from the NFL Defendants. Accordingly, the FAC fails to allege facts that would establish that Mr. Maitland owned trademark rights in any of marks asserted in the FAC. Moreover, even if one assumes Mr. Maitland did own and use the marks in commerce between approximately 1977 and 1988 (when he resigned from NFL Alum), to maintain trademark rights, a trademark owner must **continue** to use the mark in commerce. Critically, the FAC does not allege any use of the asserted marks by Mr. Maitland since 1989. Any rights Mr. Maitland could have theoretically had in the asserted marks thus ceased to exist long ago as a result of his failure to use or police the marks for more than thirty-six years.

The FAC's misunderstanding of trademark law is also fatal to its allegations relating to a purported likelihood of confusion. The FAC does not allege that Defendants' use of any purportedly infringing mark has created a likelihood of confusion as to origin, sponsorship, or approval. Instead, Plaintiffs assert that Defendants' use of the NFL Alum logo and other allegedly infringing marks signals to consumers that Defendants are the source of the goods and in doing so somehow "eliminate[s] Vic's legacy." This misconstrues trademark law. Trademark rights do not exist to protect the legacy of the alleged creator, but rather to prevent consumer confusion as to the source or sponsorship of goods.

Finally, Plaintiffs' claims under Florida's Deceptive and Unfair Trade Practices Act are barred by the statute of limitations, and Plaintiffs' Lanham Act claims should be dismissed under Rule 12(b)(6) due to laches, as the allegations in the FAC establish that Plaintiffs unreasonably delayed more than thirty-six years in bringing their purported claims, and that delay caused material harm (including, but not limited to, the fact that Mr. Maitland and presumably most witnesses who would have once had knowledge of facts that date back to 1977-1978, when the FAC alleges Mr. Maitland created the purported marks, have passed or, at a minimum, have memories that are now faded).

For all of those reasons, the FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiffs Katherine M. Lassen and James V. Maitland, as Personal Representatives of the Estate of Victor I. Maitland, first filed this lawsuit for trademark infringement under the Lanham Act and unfair trade practices under Florida law on August 6, 2025. (DE 1). On August 12, 2025, the Court issued an order *sua sponte* dismissing the complaint without prejudice on the basis that it constituted a shotgun pleading and gave Plaintiffs leave to amend. (DE 4).

On August 22, 2025, Plaintiffs filed the FAC. (DE 8). While the counts of the FAC break the Defendants into four groups—(1) the NFL Defendants; (2) NFL Alum; (3) PFHOF; and (4) Haggar—the FAC complaint brings the same three counts against each Defendant—two counts for alleged violation of the Lanham Act and a count for violation of Florida's Deceptive and Unfair Trade Practices Act. (DE 8 ¶¶ 122-197). Fundamentally, all of the counts of the FAC rely on the allegation that Mr. Maitland (or his artist) came up with the "concept" or "idea" or "design" for the various asserted marks and that since at least 1989, Defendants have "spun them as their own creation" so as to falsely suggest that Defendants "created" the marks and so as to "eliminate Vic's legacy and true identify" as the man behind the marks. (*See, e.g.,* DE 8 ¶¶ 1, 10. 14, 38, 123). The FAC does not, and cannot, allege that any of Defendants' alleged conduct has caused consumer confusion as to source or sponsorship.

## ARGUMENT

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," which violate Rule 8. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Such pleadings not only fail to give defendants adequate notice of the claims against them and grounds upon which each claim rests, but waste judicial resources, improperly broaden the scope of discovery, and undermine respect for the courts. *Id.* at 1294-95; *see also Weiland v. Palm Beach Cnty. Sheriff's Off*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (identifying various types of shotgun pleadings such as those in which each count adopts the allegations of all the preceding counts, those replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action, and those brought against multiple defendants without specifying which of the defendants are responsible for which acts).

Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "After *Twombly* and *Iqbal*, the standard to survive a 12(b)(6) motion to dismiss for failure to state a claim is 'plausibility.'" *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2003) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Marquez*, 69 F.4th at 1269 (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Marquez*, 69 F.4th at 1269 (citing *Iqbal*, 556 U.S. at 678). "Plaintiffs must go beyond merely pleading the 'sheer possibility' of unlawful activity by a defendant . . . ." *Iqbal*, 556 U.S. at 678.

## A.    The FAC Remains An Improper Shotgun Pleading.

Despite this Court's prior *sua sponte* dismissal of the original complaint, the FAC remains an impermissible shotgun pleading. The FAC alleges claims against five separate defendants and appears to assert infringement of Plaintiffs' "trademarks and trade dress" in at least seven separate marks identified in paragraph 1 of the FAC. (DE 8 ¶ 1). As in the original complaint, much of the FAC treats "Defendants all as one conglomerate entity." (DE 4 at 2). By way of example (and not an exhaustive list) paragraphs 1, 2, 21-23, 25, 26, 35-37, 39, 45, 47-53, 55, 112, 114, and 115 of the FAC all continue to contain allegations about "Defendants" as a group, without specifying which defendant purportedly did what.

Among the FAC's 111-paragraph "Factual Allegations Common to All Counts" (DE 8 ¶¶ 1-111) is a new section that purports to address "NFLP and NFL's Involvement in the Infringement of the Marks" (namely, paragraphs 56-75), but the allegations in these newly added paragraphs fail

to flesh out the counts asserted against these two defendants. Notably, the allegations in these paragraphs do not identify which of the various asserted marks were purportedly infringed by the NFL Defendants, the allegedly infringing goods or services, or how the NFL Defendants' actions caused confusion as to source or sponsorship.[1] Instead, these paragraphs relate primarily to purported agreements between the parties to this litigation and various abandoned trademark applications (*see, e.g.,* DE 8 ¶¶ 59-73) that are irrelevant to the question of whether a likelihood of confusion existed as a result of use of an allegedly infringing mark in commerce.

The counts of the FAC likewise fail to provide the requisite specificity. The FAC merely takes the three counts of the original complaint and separates them by defendant or defendant group (*e.g.,* Count I of the original complaint against all Defendants has now been replaced by Counts I through IV of the FAC with Count I directed to the NFL Defendants, Count II directed to NFL Alum, Count III directed to PFHOF, and Cout IV directed to Haggar), without providing additional factual details. Indeed, the FAC largely cuts and pastes the allegations of the original counts multiple times and simply replaces the word "Defendants" with the name of a specific defendant. (*Compare* DE 1 ¶¶ 63-70 *with* DE 8 ¶¶ 122-129, ¶¶ 130-137, ¶¶ 138-145, ¶¶ 146-153; *compare* DE 1 ¶¶ 71-75 *with* DE 8 ¶¶ 154-158, ¶¶ 159-163, ¶¶ 164-168, ¶¶ 169-173; *compare* DE 1 ¶¶ 76-81 *with* DE 8 at ¶¶ 174-179; ¶¶ 180-185, ¶¶ 186-191, ¶¶ 192-197). For example, Count I is now directed to the NFL Defendants and alleges that "since 1989, NFLP and NFL falsely mark, falsely advertise, falsely promote and designate their goods, services, and products (collectively, the 'NFLP and NFL Infringing Products') as being their own when, in fact, those NFLP and NFL Infringing Products contained the mimicked, copied, and misappropriated Marks and Intellectual Property owned by Vic, and now the Estate" (with virtually the same allegations

---

[1] As discussed in Section B(3) *infra*, the FAC does not allege confusion as to source or sponsorship.

6

being brought against the other defendants in Counts II-IV (DE 8 ¶¶ 123, 131, 139, 147)). But Count I fails to identify which of the alleged seven marks identified in paragraph 1 of the FAC has purportedly been infringed by the NFL Defendants and fails to identify any specific good, service, or product that has been offered by the NFL Defendants and is alleged to infringe. (DE 8 ¶¶ 123-129). The same is true of Counts V and IX, which allege that the NFL Defendants' "past use and continued use of the mimicked, copied, and misappropriated Marks in commerce in connection with their NFLP and NFL Infringing Products" has caused confusion (DE 8 ¶¶ 155, 175) without identifying anywhere in the count which of the Plaintiffs' seven asserted marks were purportedly infringed by the NFL Defendants or identifying any specific infringing product (DE 8 at ¶¶ 155-158, 175-179).

Finally, the FAC is also an impermissible shotgun pleading as it improperly incorporates 75 or more paragraphs into each of the counts brought against the NFL Defendants. (DE 8 ¶¶ 122, 154, 174). *See D.B.C. Corp. v. Nuctica Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1327-1328 (S.D. Fla. 2020).

Accordingly, just like the original complaint, the FAC should be dismissed as it fails to give the NFL Defendants adequate notice of the claims against them and grounds upon which each claim rests in violation of Rule 8.

**B.      The FAC Fails To Plausibly Allege Plaintiffs' Ownership Of The Asserted Marks Or The Requisite Likelihood Of Confusion.**

To succeed on its claims under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act) for trademark infringement and false designation of origin,[2] Plaintiffs must establish that: (1) they had

---

[2] It is unclear whether Counts I and IV both seek to assert trademark infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or whether Count I instead seeks to allege infringement under Section 32, 15 U.S.C. § 1114. While the header that precedes Count I would suggest that the claim is brought under Section 43(a), paragraph 127

enforceable trademark rights in the mark or name at issue, and (2) the defendant made unauthorized use of a mark or name in a manner likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. 15 U.S.C. § 1125(a)(1); *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). Plaintiffs fail to allege either of these required elements.

### 1.    Plaintiffs Fail To Plausibly Allege Ownership Of The Asserted Marks.

Fundamentally, Plaintiffs' FAC misapprehends trademark law. The FAC repeatedly focuses on Mr. Maitland's alleged conception, design, and development of the purported marks. For example, it references "Vic's Gold Jacket ***concept*** and blazer ***design***" (DE 8 ¶ 2) (emphasis added), which is made by Haggar for PFHOF, not the NFL Defendants; discusses pending copyright applications and a design by "Vic's artist" (DE 8 ¶¶ 13, 19, 38, 40); discusses Mr. Maitland "creating and designing the original NFL Alumni Logo Mark and Gold Jacket," including getting permission (*i.e.*, a license) from the NFL to use its famous trademark shield (which Mr. Maitland revised by simply adding the word "ALUMNI" across the existing design) (DE 8 at ¶¶ 14, 18, 41, 43); repeatedly references Mr. Maitland's "design," "creation," and "idea" for various other alleged marks and events (DE 8 ¶¶ 20, 21); and discusses his overall contribution to the NFL and NFL Alum (DE 8 at ¶ 21). These allegations, however, are a red herring.

Trademark rights do not arise from conception or development of a mark. Instead, they arise from use of the mark in commerce as a signifier of source. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:11 (4th ed. 2024) ("It is a basic rule of trademark law

---

of that Count alleges a violation of Section 32. (DE 8 ¶ 127). As Section 32 is directed to infringement of a registered mark, it is inapplicable. *See* 15 U.S.C. § 1114(1); *see also Weinacker v. Wahl Clipper Corp.*, No. 23-12782, 2024 U.S. App LEXIS 13069, at *5 (11th Cir. May 31, 2024). Here Plaintiffs have not alleged (and cannot allege) that they own a federal trademark registration for any of the asserted marks. Accordingly, to the extent Count I is an attempt to bring a claim under Section 32 of the Lanham Act, it must also be dismissed for this independent reason.

that a concept or an idea for a new trademark is not itself a 'trademark.' Rights in a trademark are gained through use before the relevant public in the marketplace, not through invention."); *see also Am. Exp. Co. v. Goetz*, 515 F.3d 156, 159-60 (2d Cir. 2008) (holding that entrepreneur who suggested a tagline to a credit card company did not himself use the slogan as a trademark because it did not designate the origin of any goods or services he offered); *Goldberg v. Cuzcatlan Bevs., Inc.*, 250 B.R. 48, 53 (S.D. Fla. 2001) ("Ownership of a trademark depends on usage, not creation."); *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328 (M.D. Fla. 1998) (holding that a former director's conception of a mark did not grant him any rights in the mark, which was instead owned by the association).

Here, the FAC does not plausibly allege that Mr. Maitland ever ***personally*** offered goods or services using the marks. Whatever role he may have had in the conception of the marks, the allegations of the FAC make clear that it was NFL Alum who used the marks in commerce (and, in the case of the alleged "NFL Alumni Logo" mark asserted by Plaintiffs, did so pursuant to a license granted to NFL Alum by the NFL Defendants). For example, the FAC repeatedly depicts an excerpt from the NFL Alum's Summer of 1977 *Time Out!* Magazine that announced that former NFL Commissioner "Pete Rozelle came to [NFL Alum's] rescue and gave [them] permission to use the famous NFL shield with the word ALUMNI across it."[3] (DE ¶¶ 13, 18-19). While the FAC discussed Mr. Maitland's role in securing permission (*i.e.,* a license) for use the "famous NFL

---

[3] While not necessary to this motion (given the FAC's acknowledgement that the NFL Alum logo purportedly conceived by Mr. Maitland was the "famous NFL shield" with the word "ALUMNI" added), this Court may take judicial notice of U.S. Registration No. 1,056,303, which is a federal registration for the famous NFL shield trademark, , that is owned by NFL Properties LLC, was filed on October 6, 1975 (*e.g.*, before the FAC alleges Mr. Maitland conceived of any of the asserted marks), and claims a first use in commerce date of June 1, 1941.

shield" as modified for limited purposes (*see, e,g,* DE 8 at ¶¶ 14, 41-43), nothing in these allegations would plausibly support the assertion that the license to the famous mark was granted to Mr. Maitland **personally** (as opposed to NFL Alum), much less that it transferred ownership in that mark such that Plaintiffs can now assert rights in the modified mark against the NFL Defendants. That Mr. Maitland never **personally** held a license, much less **personally** used and owned trademarks rights in the asserted marks, is consistent with other documents referenced or incorporated into the FAC. (*See, e.g.,* DE 8 ¶ 38 (letter giving permission for logo use was addressed to Mr. Maitland at "NFL ALUMNI ASSOCIATION, INC."); DE 8 ¶ 64 (reference to a trademark application filed by NFL Alum on July 1, 1987, when Mr. Maitland was leading the organization, for registration of one of the asserted marks, which while abandoned (presumably due to conflict with marks owned by NFLP) suggests that NFL Alum understood that it and not Mr. Maitland owned the asserted marks); DE 8 ¶¶ 59-62 (discussing new licensing agreement between NFLP and NFL Alum entered into in 1993)).

Similarly, while asserting that Mr. Maitland was the force behind the tradition, the FAC alleges that it is "the National Football League Alumni"—not Mr. Maitland—that "presents the famed 'gold jackets' to each year's class of inductees into the Pro Football Hall of Fame." (DE 8 ¶ 21). Likewise, while the FAC includes scant information about the remaining asserted marks,[4]

---

[4] Apart from listing "The NFL Alumni Charity Golf Tour," "Caring for Kids," "NFL Alumni Player of the Year," "NFL Alumni Player of the Year Awards Dinner," and "The Order of The Leather Helmet" as marks being asserted in paragraph 1 of the FAC and a conclusory assertion, devoid of any factual support, that these marks have been used by four of the five Defendants in paragraph 53, the only other paragraphs in the FAC that makes any specific reference to these marks are paragraphs 10 and 29 (which reference "Caring for Kids" and depicts NFL Alum "Mission and Vision" statement), paragraph 20 (the only other paragraph that specifically references "The Order of the Leather Helmet"), and paragraph 21 and the Proclamation depicted in paragraph 54 of the FAC (which reference "Caring for Kids" and are the only other references to "The NFL Alumni Charity Golf Tour," and "NFL Alumni Player of the Year Awards Dinner"). (DE ¶¶ 1, 10, 20, 21, 29, 53, 54).

these alleged marks appear to have been used as "the mission and motto" of NFL Alum in the case of the alleged "Caring for Kids" mark (DE 8 ¶¶ 21, 54) or in connection with fundraising events or awards that are hosted or presented by NFL Alum in the case of "The NFL Alumni Charity Golf Tour," "NFL Alumni Player of the Year," "NFL Alumni Player of the Year Awards Dinner," and "The Order of The Leather Helmet" marks (DE 8 ¶¶ 20, 21, 54).[5] That Mr. Maitland helped launch these awards or programs during his service to NFL Alum or conceived of the underlying ideas and names for these programs does not give him rights in the asserted marks.

In this regard *Compton v. Fifth Avenue Association, Inc.*, 7 F. Supp. 2d 1328 (M.D. Fla. 1998), is informative. In that case, Richard Compton, a former member of the Board of Directors of Shelter for Abused Women of Collier County had conceived of the name "Via Colori" for a street-painting festival and at Compton's suggestion, the Shelter's Board of Directors adopted that name for the event, which was held in May 1994, April 1995, and April 1996. *Id.* at 1329. In the summer of 1995, Compton sought to register the "Via Colori" mark with the USPTO and in May 1996, he informed the Shelter that he had registered the mark and would not allow it to be used in connection with the Shelter's 1997 event. When posters for the Shelter's 1997 newly branded "The Festival of Colors" invoked the prior "Via Colori" events, Compton sued the Shelter for trademark infringement and unfair competition. *Id.* at 1329-30. The Court granted summary judgment in favor of the Shelter finding that the Shelter, not Compton, was the owner of the mark. *Id.* at 1331-1332. The Court explained, "the fact that Compton first conceived of the mark 'Via Colori' is irrelevant to his ownership of the mark," as the entity that has used the mark was the Shelter, who

---

[5] Notably, despite alleging that the jackets and events are presented or hosted by NFL Alum and PFHOF, the FAC nevertheless appears to assert claims against the NFL Defendants related to the jacket and events, further evidencing that it remains an improper shotgun pleading that fails to distinguish between the five Defendants.

had successfully established "Via Colori" as their signature event. *Id.*; *see also La. Ath. Down on the Bayou, L.L.C. v. Bayou Bowl Ass'n*, No. 11-303-BAJ-SCR, 2013 U.S. Dist. LEXIS 68582, at *2, 9, 24-26, 2013 WL 2102354 (M.D. La. May 14, 2013) (holding former Bayou Bowl Steering Committee member who allegedly created the name and concept of the Bayou Bowl in 2001 did not use the Bayou Bowl mark in commerce as there was no evidence that he "used the mark independent of his membership in the Bayou Bowl Steering Committee and in preparation for the 2003 game" that was "produced by committee or collaboration, not by Rigby alone"). Like the Shelter in *Compton*, here the marks were not used by Mr. Maitland personally, but by NFL Alum (with the NFL Defendants' permission). Accordingly, Plaintiffs cannot establish that they own any of the marks asserted in the FAC.

### 2. Even Assuming *Arguendo* That Plaintiffs Could Establish Mr. Maitland Once Used And Owned The Marks, Any Rights He Had Were Long Ago Abandoned.

As trademark rights are derived from use of a mark in commerce, trademark rights continue to exist only so long as the owner of the mark continues to use the mark in commerce. Trademark rights are lost if an owner ceases to use the mark in commerce. *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008).

Under the Lanham Act, a mark is deemed to be abandoned when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Moreover, the Lanham Act further provides that nonuse of a mark for three consecutive years "shall be *prima facie* evidence of abandonment." *Id.* (emphasis added). It also specifies that "use" of a mark "means the bona fide use of such mark in the ordinary course of trade." *Id.* Notably, the requisite intent to resume use of the mark "cannot be far-flung or indefinite" but must instead be an intent to resume within the reasonably foreseeable future. *Nat. Answers*, 529 F.3d at 1329.

Here, the FAC establishes a ***more than thirty-six-year*** period of nonuse by both Mr. Maitland and Plaintiffs, which constitutes *prima facie* evidence of abandonment. Specifically, the FAC alleges that Mr. Maitland's activities with respect to the marks occurred from approximately 1977 through 1988, when he stepped down from his 10-year tenure as head of the NFL Alum and that all use of the asserted marks by Defendants since 1989 ("some thirty-six years") has been infringing. (DE 8 ¶¶ 22; 44-45). It further alleges that Mr. Maitland passed away on November 29, 2019, and from 2012 until 2019, lacked the mental capacity to understand or act upon the purported infringement. (DE 8 ¶ 46).

Even assuming *arguendo* that Mr. Maitland once used and owned the trademarks asserted in the FAC (despite the factual allegations to the contrary as set forth above), those marks were long ago abandoned by Mr. Maitland. There has been no use of the marks by him or Plaintiffs for some thirty-six years, and there are no allegations in the FAC that would suggest Mr. Maitland had an intent to resume use of the mark in the reasonably foreseeable future, much less that such intent existed during every three-year period of nonuse. To the contrary, it does not allege any actions by Mr. Maitland following 1989 that would evidence an intent to resume and even alleges that there was an approximately eight-year period from 2012 until 2019 during which he lacked mental capacity. Accordingly, even were this Court to find Mr. Maitland once had rights in the asserted marks, Plaintiffs' claims should alternatively be dismissed on the grounds that he abandoned the marks. *See, e.g., La. Ath. Down on the Bayou, L.L.C.*, 2013 U.S. Dist. LEXIS 68582, at *27-29 (holding even assuming the plaintiff could attribute "use" of the Bayou Bowl mark to former Bayou Bowl Steering Committee member who was involved in planning the first Bayou Bowl game that took place in 2003, summary judgment in favor of defendant was still appropriate as more than three years had elapsed without plaintiff using the trademark).

### 3.       The FAC Also Fails To Allege The Requisite Likelihood Of Confusion.

Plaintiffs' Lanham Act claims must also be dismissed because Plaintiffs have not alleged that the NFL Defendants have made unauthorized use of a mark or name in a manner likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Supreme Court has explicitly recognized that Section 43(a) does not protect against alleged confusion as to who conceived of or designed a product or service. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32-33 (2003), the Supreme Court explained: "The consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product—and typically does not care whether it is." In declining to stretch the Lanham Act to protect the creator of content (*e.g.*, author of a work), the Court recognized that to do so would conflict with copyright law. *Id.* at 33-37 ("In sum, reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the

14

producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."). *See also La. Ath. Down on the Bayou, L.L.C.*, 2013 U.S. Dist. LEXIS 68582, at *16 (explaining that the Lanham Act does not protect the source of content or create a cause of action for plagiarism (*e.g.*, use of works without attribution), as consumers do not assume or care whether the idea for a branded product originated from a particular person or entity).

Here, each of the Counts asserted against the NFL Defendants alleges that by "use of the mimicked and copied Marks to promote their brands since 1989," they have falsely promoted and designated their goods, services, and products "as being their own when, in fact, those NFLP and NFL Infringing Products contain the mimicked, copied, and misappropriated Marks and Intellectual Property owned by Vic, and now the Estate" and "falsely associate and falsely suggest to consumers, including millions of NFL fans, that they created and are the genuine owners and designers of the mimicked Marks used for the NFLP and NFL Infringing Products; palm off the use of the mimicked, copied, and misappropriated Marks in their NFLP and NFL Infringing Products as their own, and commit acts of unfair competition to obtain and scheme together to eliminate Vic's legacy and true identity as the 'Man Behind the Gold Jacket' and other Marks." (DE 8 ¶ 123; *see also* DE 8 ¶¶ 23, 125, 155, 175).

Critically, Plaintiffs do not claim that any consumers are likely to be confused by the NFL Defendants' alleged conduct, but only that consumers are unaware of Mr. Maitland's role in the creation of the purported marks. In *Dastar Corp.*, however, the Supreme Court explicitly held that such allegations do not support a claim under the Lanham Act. 539 U.S. at 32-33. Accordingly, even if Plaintiffs could establish ownership of the purported marks (which they cannot), the FAC

still would fail to state a claim as it has not alleged an actionable likelihood of confusion under the Lanham Act.

4.     **For The Same Reasons Set Forth Above, Plaintiffs' Claim For Violation Of Florida's Deceptive And Unfair Trade Practice Act Fails To State A Claim.**

As Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practice (FDUTPA) is based on Defendants' alleged trademark infringement and relies on the same underlying facts, Plaintiffs' state law claim must be dismissed for the same reasons set forth above. *See Nat. Answers, Inc.*, 529 F.3d at 1328 (holding that where plaintiff "cannot succeed on its Lanham Act claims," its claims under Florida law "necessarily fail"); *Marco's Franchising, LLC v. Marco's Italian Express, Inc.*, No. 8:06-cv-00670-T-17-TGW, 2007 U.S. Dist. LEXIS 49211, at *9-10, 2007 WL 2028845 (M.D. Fla. July 9, 2007) (analyzing plaintiff's claim for violation of FDUTPA simultaneously with the plaintiff's Lanham Act claims as they were "derivative" of the Lanham Act counts and would require proof of the same elements of trademark infringement).

D.     **Plaintiffs' Claims Are Barred By Plaintiffs' Delay In Bringing Suit.**

In addition to failing to state a claim, Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) due to Plaintiffs' decades-long delay in bringing suit.

As noted above, the FAC alleges that the infringement of the marks commenced in 1989 (after Mr. Maitland stepped down from his 10-year tenure as head of NFL Alum) and that all use of the asserted marks since that time by Defendants has been infringement. (DE 8 ¶¶ 22, 39, 44-45, 51-52, 123). In other words, the purported infringement commenced more than thirty-six years ago. The FAC also alleges that Mr. Maitland (who would be Plaintiffs' key witness as to the allegations set forth in the FAC) passed away on November 29, 2019, at the age of ninety-eight, and that from 2012 until 2019, Mr. Maitland lacked the mental capacity to understand or act upon Defendants' alleged infringement of the asserted marks. (DE 8 ¶ 46). Even setting aside the

question of Mr. Maitland's capacity between 2012 until his death in 2019, there was at least twenty-three years in which Mr. Maitland had the capacity to act and chose not to do so. There was also a five-year delay following Mr. Maitland's death.

The statute of limitations for a claim under FDUTPA is four years, as it is based on statutory liability. Fla. Stat. § 95.11(3)(e); *see also Sclar v. OsteoMed, L.P.*, No. 17-23247-CIV-MORENO, 2018 U.S. Dist. LEXIS 11373, at * 7 2018 WL 559137 (S.D. Fla. Jan. 24, 2018). Here, the statute of limitations ran on Plaintiffs' FDUTPA claim no later than 1993 (more than thirty years ago). As such, Plaintiffs' FDUTPA claim must be dismissed.

Although "[t]he Lanham Act does not contain a statute of limitations," the equitable doctrine of laches may bar a claim for trademark infringement. *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). To successfully assert a defense of laches, a defendant must show: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Id*. As the Lanham Act does not contain a statute of limitations, Courts consider the statute of limitations period for analogous state law claims as the touchstone for laches, which, in Florida, is four years. *See* Fla. Stat. § 95.11(3); *Pinnacle Advert. & Mktg. Grp. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1005 (11th Cir. 2021). While laches is an affirmative defense, dismissal is nonetheless appropriate under Federal Rule of Civil Procedure 12(b)(6) where the affirmative defense "clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit*, 727 F.2d 1067, 1069 (11th Cir. 1984), *reinstated on reh'g en banc*, 764 F.2d 1400 (11th Cir. 1985); *see also Secret of the Islands, Inc. v. Hymans Seafood Co.*, No. 2:17.cv-342-BHH, 2019 U.S. Dist. LEXIS 29122, at *23-30, 2019 WL 917209 (D.S.C. Feb. 25, 2019) (dismissing Lanham Act claims under Rule 12(b)(6) where the amended complaint indicated a nearly five-year delay in bringing

suit and explaining that the Plaintiff had "indeed, pled itself out of court by demonstrating unreasonable delay and undue prejudice to Defendants on the face of the amended complaint").

The FAC establishes that there was a ***thirty-six-year delay*** in bringing suit. Delay is generally calculated from the moment a plaintiff knows or should have known of its infringement claim. *See Pinnacle Advert. & Mktg. Grp.*, 7 F.4th at 1006. Here, Mr. Maitland knew of his claim in 1989, after he stepped down from his 10-year tenure as head of the NFL Alum and the infringement is alleged to have begun. (DE 8 ¶¶ 22, 39, 44, 51, 123). Notably, the FAC alleges that Mr. Maitland created the asserted marks as part of a "sweeping reinvention plan" and "change in brand and corporate image" for NFL Alum and the NFL Alum's Summer of 1977 *Time Out!* Magazine (which is alleged to contain Mr. Maitland's trade dress and concepts) touts these as "THE NEW NAME AND LOOK OF THE NFL ALUMNI." (DE 8 ¶¶ 8-13, 17-19, 38). As these asserted marks were allegedly created as part of a rebranding of NFL Alum and in connection with annual traditions and events (such as awarding gold jackets to inductees into the Pro Football Hall of Fame) (*see, e.g.,* DE 8 ¶¶ 20-21), Mr. Maitland would have known that use of these marks would continue after he stepped down from his leadership role in 1988. That Mr. Maitland was well aware that use of the marks continued after his departure is further evidenced by the honor he was bestowed on January 27, 2001, when NFL Alum proclaimed him a "LIFETIME HONORARY PROFESSIONAL MEMBER," awarding him a certificate showing the NFL Alum logo and discussing his contributions to NFL Alum, including in establishing the NFL Alumni Charity Golf Tour and NFL Alumni Player of the Year Award Dinner and being the driving force behind the gold jackets awarded each year to inductees into the Pro Football Hall of Fame. (DE 8 ¶ 54).

Likewise, there is no excuse for Plaintiffs' egregious multi-decade delay in bringing suit. Even if one discounts the period from 2012 until Mr. Maitland's death in 2019, when Mr. Maitland

allegedly lacked capacity to bring suit (DE 8 ¶ 46), there is still a delay of nearly 30 years. This is not just well over the four-year Florida statute of limitations that serves as a touchstone for laches, but more than seven times that period.

Finally, that the NFL Defendants were prejudiced by Plaintiffs' delay in bringing suit is clear on the face of the FAC. "Courts have previously recognized two categories of prejudice caused by a delay in bringing a trademark infringement suit—evidentiary prejudice and economic prejudice." *Pinnacle Advert. & Mktg. Grp.*, 7 F.4th at 1010. Evidentiary prejudice includes such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died, while economic prejudice encompasses actions made by the defendant that it would not have taken or consequences it would not have experienced had the plaintiff promptly brought suit. *Id.*

Here, arguably the most critical witness is Mr. Maitland, who had knowledge of the creation and implementation of the alleged marks and elected not to personally file suit during his lifetime (perhaps because he understood that he had no claims), but passed away in 2019. Had there been no delay, Mr. Maitland could have provided testimony and been cross-examined regarding the allegations now asserted by Plaintiffs. (DE 8 ¶ 46). This alone indisputably establishes evidentiary prejudice. Of course, it is not just Mr. Maitland's unavailability that prejudices NFL Defendants. The allegations relating to Mr. Maitland's alleged ownership of the mark in the FAC date back to 1977 (almost 50 years), which is a long time for witnesses' memories to fade, witnesses to have passed away, or documents to have been lost or destroyed. (*See, e.g.,* DE ¶ 14). Not surprisingly, virtually all the significant persons identified by Plaintiffs in the FAC who would have first-hand knowledge of the facts alleged by Plaintiffs have passed away.[6]

---

[6] By way of example, Pete Rozelle, the former Commissioner of the NFL who allegedly met with Mr. Maitland regarding the gold jacket and granted permission with respect to the alleged NFL Alum logo (*see* DE 8 ¶¶ 14, 18, 20, 41-43, 57), passed away in 1996. Similarly, Bill Chip (*see*

Plaintiffs cannot dispute that their thirty-six-year delay in bringing suit caused significant evidentiary prejudice. Further, the allegations of the FAC also establish economic prejudice, alleging (among other things) that Plaintiffs are entitled to damages based on NFL Defendants' purported use of the marks for more than three decades. (DE 8 at ¶¶ 35, 129, 178 and p. 85 paragraph (4)).

If ever there was a case in which the affirmative defense of laches was clear on the face of the complaint, this is it. Plaintiffs inexcusably delayed some thirty-six years in bringing suit, as a result of which thereis significant evidentiary prejudice to the NFL Defendants (including the passing of the most critical witness), as well as economic harm. Accordingly, Plaintiffs have "pled [themselves] out of court by demonstrating unreasonable delay and undue prejudice to Defendants on the face of the amended complaint." *Secret of the Islands, Inc.*, 2019 U.S. Dist. LEXIS 29122, at *23-30.

## CONCLUSION

For the foregoing reasons, the NFL Defendants respectfully request that the FAC be dismissed and the dismissal be with prejudice.

---

DE 8 ¶¶ 6-8) passed away in 1992; Bill Dudley (*see* DE 8 ¶¶ 13-14) passed away in 2010; Sylvan Landau (*see* DE 8 ¶¶ 33-34, 106) passed away in 2010; William J. Ray (*see* DE 8 ¶¶ 43, 57) passed away in 1986; and Bill Bidwell (*see* DE 8 ¶ 43) passed away in 2019. Had Mr. Maitland timely filed suit when the infringement allegedly commenced in 1989, all of these individuals (with the exception of Mr. Ray) would have still been living.

Dated: October 14, 2025

Respectfully submitted,

/s/ Alec H. Schultz
Alec H. Schultz, FL Bar No.: 35022
HILGERS GRABEN PLLC
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Tel: 305-630-8304
aschultz@hilgersgraben.com

Mary Ann Novak, *(pro hac pending)*
Nebraska Bar No.: 24851
HILGERS GRABEN PLLC
1320 Lincoln Mall Suite 200
Lincoln, NE 68508
Tel: (402) 418-2106
Fax: (402) 413-1880
mnovak@hilgersgraben.com

Jon Hyland, *(pro hac pending)*
Texas Bar No. 24046131
HILGERS GRABEN PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, TX 75230
Telephone: (972) 645-3097
Facsimile: (402) 413-1880
jhyland@hilgersgraben.com

**ATTORNEYS FOR DEFENDANTS
NFL PROPERTIES LLC AND
NATIONAL FOOTBALL LEAGUE**

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Alec H. Schultz
Alec H. Schultz