**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-80981-CV-MIDDLEBROOKS

KATHERINE M. LASSEN, *et al.*,

     Plaintiffs,

v.

NFL PROPERTIES LLC, *et al.*,

     Defendants.

_____/

## DEFENDANT, NATIONAL FOOTBALL LEAGUE ALUMNI, INC.'S, MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant, National Football League Alumni, Inc. ("NFLA"), hereby moves to dismiss Plaintiffs' First Amended Complaint ("FAC") as an improper shotgun pleading under Rule 8 and for failure to allege claims upon which relief can be granted pursuant to Rule 12(b)(6).  The NFLA adopts the arguments articulated by the NFL Properties LLC ("NFLP") and National Football League ("NFL") (collectively, the "NFL Defendants") and, to the extent applicable, those articulated by the other defendants to this action.

## PRELIMINARY STATEMENT

Victor I. Maitland ("Mr. Maitland") served as CEO and Executive Director of Defendant, National Football League Alumni, Inc. ("NFLA"), from 1977 to 1988, and passed away in 2019. Mr. Maitland's Estate/personal representatives now bring various claims asserting trademark infringement under federal and state law – despite the fact that Mr. Maitland was fully aware of the use of the subject Marks for many years and never asserted any rights to or objections to the use thereof.   During his tenure with the NFLA he was a proud member and, at times, officer and director who took many actions on behalf of the NFLA, including the development of its logo,

and/or the Mark.  According to the FAC, since 1977, the NFLA has been using trademarks allegedly created by Mr. Maitland, including a logo that Plaintiffs acknowledge was used by Maitland (and/or the NFLA) as an authorized agent of the NFLA with permission from the NFL Defendants. DE 8 ¶ 17.[1]

Mr. Maitland knew about Defendants' activities, and in fact facilitated the NFLA's use of the Marks. DE 8 ¶ 16.  Indeed, according to the FAC, in 2001, NFLA proclaimed him a "LIFETIME HONORARY PROFESSIONAL MEMBER," and presented him with a certificate bearing the NFLA logo and describing the programs that Mr. Maitland developed for the NFLA's use commencing in 1977. The NFLA continued to implement these programs and use the marks after his departure in 1988.

Now, forty-eight years after the NFLA has been using the marks, and thirty-six years after Maitland resigned as its president, which is when according to the FAC the infringing activities may have begun, his children have brought a host of claims based on a tortured reading of trademark law. However, Plaintiffs' FAC is fatally flawed and must be dismissed with prejudice.

First, despite this Court's prior *sua sponte* dismissal of the original complaint, the FAC remains an impermissible shotgun pleading.

Second, the FAC fails to state any claims, because the FAC does not plausibly allege that Mr. Maitland was personally using any of the alleged marks in commerce. To the contrary, the FAC alleges that the marks at issue were used by NFLA, and that the NFLA logo was used with permission from the NFL Defendants, and as authorized by Mr. Maitland while he was working

---

[1] The FAC also describes other purported trademarks that Defendants have used for the past thirty-six years for programs that honor and support former NFL players and charitable events which Mr. Maitland similarly alleges ambiguous rights in (the "Marks" as defined in the FAC).  None of the Marks are registered trademarks owned by Plaintiff.

with the NFLA. Accordingly, the FAC fails to allege facts that would establish that Mr. Maitland owned trademark rights in any of marks asserted in the FAC. Critically, the FAC establishes that any rights Mr. Maitland could have theoretically had in the asserted marks thus ceased to exist long ago as a result of his failure to use or police the marks for more than forty-eight years.

Third, the FAC does not allege that Defendants' use of any purportedly infringing mark has created a likelihood of confusion as to origin, sponsorship, or approval. Instead, Plaintiffs assert that Defendants' use of the NFLA logo and other allegedly infringing marks signals to consumers that Defendants are the source of the goods and in doing so somehow "eliminate[s] Vic's legacy." Legacy has nothing to do with trademark infringement. Trademark rights exist to prevent consumer confusion as to the source or sponsorship of goods. The FAC also fails to distinguish between use of specific marks by specific defendants.

Finally, Plaintiffs' Lanham Act claims should be dismissed under Rule 12(b)(6) due to laches and estoppel, as the allegations in the FAC establish that Plaintiffs unreasonably delayed more than thirty-six years in bringing their purported claims, prejudicing the NFLA including due to the death of witnesses including Mr. Maitland.

Like the claims for trademark violations, Plaintiffs' FDUPTA claims fail to state a claim because they fail to contain allegations of actual damages and are otherwise time barred. For all of those reasons, the FAC should be dismissed with prejudice.

**FACTUAL BACKGROUND**

Plaintiffs, Katherine M. Lassen and James V. Maitland, as Personal Representatives of the Estate of Victor I. Maitland[2] (collectively, the "Plaintiffs"), first filed this lawsuit for trademark

---

[2] The NFLA will assume standing for purposes of this Motion to Dismiss, but Plaintiffs do not plead and provide no support for their right to bring the action at bar.

infringement under the Lanham Act and unfair trade practices under Florida law on August 6, 2025. (DE 1). On August 12, 2025, the Court issued an order *sua sponte* dismissing the complaint without prejudice on the basis that it constituted a shotgun pleading and gave Plaintiffs leave to amend. (DE 4).

On August 22, 2025, Plaintiffs filed the FAC. (DE 8). While the counts of the FAC break the Defendants into four groups—(1) the NFL Defendants; (2) NFLA; (3) National Football Museum Inc. d/b/a Pro Football Hall of Fame ("PFHOF"); and (4) Haggar Clothing Co. ("Haggar")—the FAC complaint brings the same three counts against each Defendant—two counts for alleged violation of the Lanham Act and a count for violation of Florida's Deceptive and Unfair Trade Practices Act. (DE 8 ¶¶ 122-197). Fundamentally, all of the counts of the FAC rely on the allegation that Mr. Maitland (or his artist) came up with the "concept" or "idea" or "design" for the various asserted marks and allowed the NFLA to use it from 1977 and onward. However, after Maitland retired from his position as president of the NFLA in 1989, Defendants have "spun them as their own creation" so as to falsely suggest that Defendants "created" the Marks and so as to "eliminate Vic's legacy and true identify" as the man behind the Marks. (*See, e.g.,* DE 8 ¶¶ 1, 10. 14, 38, 123). The FAC does not, and cannot, allege that any of Defendants' alleged conduct has caused consumer confusion as to source or sponsorship, nor does it contain any allegations of how Mr. Maitland suffered damages.

## **ARGUMENT**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," which violate Rule 8. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Such pleadings not only fail to give defendants adequate

notice of the claims against them and grounds upon which each claim rests, but waste judicial resources, improperly broaden the scope of discovery, and undermine respect for the courts. *Id.* at 1294-95; *see also Weiland v. Palm Beach Cnty. Sheriff's Off*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Rule 12(b)(6) authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "After *Twombly* and *Iqbal*, the standard to survive a 12(b)(6) motion to dismiss for failure to state a claim is 'plausibility.'" *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2003) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Marquez*, 69 F.4th at 1269 (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)).

Plaintiffs cannot meet their burden. The FAC clearly constitutes a shotgun pleading, in that it fails to put each Defendant on notice of the conduct which gives rise to the claims at issue. To the extent that the allegations of the FAC can be discerned, however, there is no question that the FAC fails to state a claim upon which relief can be granted, in that (i) it fails to establish that the Plaintiffs own the Marks; and (ii) otherwise shows that the Plaintiff abandoned them. Even if the FAC contained allegations showing that the Plaintiffs owned the Marks, and there are none, the allegations of the FAC conclusively establish that the Plaintiff is barred by the doctrine of laches or has otherwise acquiesced to the use by the NFLA of the Marks. As a result, this shotgun pleading must be dismissed, **with prejudice.**

### A.      The FAC Remains an Improper Shotgun Pleading.

Despite this Court's prior *sua sponte* dismissal of the original complaint, the FAC remains an impermissible shotgun pleading. The FAC alleges claims against five separate defendants and appears to assert infringement of Plaintiffs' "trademarks and trade dress" in at least seven separate Marks identified in paragraph 1 of the FAC. (DE 8 ¶ 1). As in the original complaint, much of the FAC treats "Defendants all as one conglomerate entity." (DE 4 at 2). By way of example (and not an exhaustive list) paragraphs 1, 2, 21-23, 25, 26, 35-37, 39, 45, 47-53, 55, 112, 114, and 115 of the FAC all continue to contain allegations about "Defendants" as a group, without specifying which defendant purportedly did what.

Among the FAC's 111-paragraph "Factual Allegations Common to All Counts" (DE 8 ¶¶ 1-111) is a new section that purports to address "NFLA's Involvement in the Infringement of the Marks" (namely, paragraphs 56-75), but the allegations in these newly added paragraphs fail to flesh out the counts asserted against the NFLA. Notably, the allegations in these paragraphs do not identify which of the various asserted marks were purportedly infringed by the NFLA, the allegedly infringing goods or services, or how the NFLA's actions caused confusion as to source or sponsorship.[3] Instead, these paragraphs relate primarily to purported agreements between the parties to this litigation and various abandoned trademark applications (*see, e.g.,* DE 8 ¶¶ 59-73) that are irrelevant to the question of whether a likelihood of confusion existed as a result of use of an allegedly infringing mark in commerce.

The counts of the FAC likewise fail to provide the requisite specificity. The FAC merely takes the three counts of the original complaint and separates them by defendant or defendant group (*e.g.,* Count I of the original complaint against all Defendants has now been replaced by

---

[3] As discussed in Section B(3) *infra*, the FAC does not allege confusion as to source or sponsorship.

Counts I through IV of the FAC with Count I directed to the NFL Defendants, Count II directed to

NFLA, Count III directed to PFHOF, and Cout IV directed to Haggar), without providing

additional factual details. Indeed, the FAC largely cuts and pastes the allegations of the original

counts multiple times and simply replaces the word "Defendants" with the name of a specific

defendant. (*Compare* DE 1 ¶¶ 63-70 *with* DE 8 ¶¶ 122-129, ¶¶ 130-137, ¶¶ 138-145, ¶¶ 146-153;

*compare* DE 1 ¶¶ 71-75 *with* DE 8 ¶¶ 154-158, ¶¶ 159-163, ¶¶ 164-168, ¶¶ 169-173; *compare*

DE 1 ¶¶ 76-81 *with* DE 8 at ¶¶ 174-179; ¶¶ 180-185, ¶¶ 186-191, ¶¶ 192-197). For example,

Count II is now directed to the NFLA and alleges that "since 1989, NFLA falsely marks, falsely

advertises, falsely promotes and designate their goods, services, and products (collectively, the

'NFLA Infringing Products') as being their own when, in fact, those NFLA Infringing Products

contained the mimicked, copied, and misappropriated Marks and Intellectual Property owned by

Vic, and now the Estate" (with virtually the same allegations being brought against the other

defendants in Counts I, III, and IV (DE 8 ¶¶ 123, 131, 139, 147)). But Count II fails to identify

which of the alleged seven marks identified in paragraph 1 of the FAC has purportedly been

infringed by the NFLA and fails to identify any specific good, service, or product that has been

offered by the NFLA and is alleged to infringe. (DE 8 ¶¶ 123-129). The same is true of Counts VI

and X, which allege that the NFLA's "past use and continued use of the mimicked, copied, and

misappropriated Marks in commerce in connection with their NFLA's Infringing Products" has

caused confusion (DE 8 ¶¶ 160, 181) without identifying anywhere in the count which of the

Plaintiffs' seven asserted marks were purportedly infringed by the NFLA or identifying any

specific infringing product (DE 8 at ¶¶ 159-163, 180-185).   The deficiency is especially

problematic given that, as noted above, the NFLA's alleged "involvement in the infringement of

the marks" (DE 8 ¶¶ 76-129) focuses solely on "secret" licensing agreements with the NFL

Defendants relative to the logo (and not the other Marks) – not on Plaintiff's ownership of any specific marks or (b) the NFLA's alleged misuse of the same. If anything, the logo trust agreement demonstrates that the Marks – and in particular the NFLA logo – have been properly used by the NFLA and not infringing.

Finally, the FAC is an impermissible shotgun pleading as it improperly incorporates 75 or more paragraphs into each of the counts brought against the NFLA. (DE 8 ¶¶ 130, 159, 180). *See D.B.C. Corp. v. Nuctica Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1327-1328 (S.D. Fla. 2020). Accordingly, just like the original complaint, the FAC should be dismissed as it fails to give the NFLA (and other defendants) adequate notice of the claims against them and grounds upon which each claim rests in violation of Rule 8.

**B.      The FAC Fails to Plausibly Allege Claims for Trademark Infringement**

To succeed on its claims under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act) for trademark infringement and false designation of origin,[4] Plaintiffs must establish that: (1) they had enforceable trademark rights in the mark or name at issue, and (2) the defendant made unauthorized use of a mark or name in a manner likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. 15 U.S.C. § 1125(a)(1); *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). Plaintiffs fail to allege either of these required elements.

---

[4] It is unclear whether Counts II and V both seek to assert trademark infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or whether Count II instead seeks to allege infringement under Section 32, 15 U.S.C. § 1114. While the header that precedes Count II would suggest that the claim is brought under Section 43(a), paragraph 127 of that Count alleges a violation of Section 32. (DE 8 ¶ 127). As Section 32 is directed to infringement of a registered mark, it is inapplicable. *See* 15 U.S.C. § 1114(1); *see also Weinacker v. Wahl Clipper Corp.*, No. 23-12782, 2024 U.S. App LEXIS 13069, at *5 (11th Cir. May 31, 2024). Here Plaintiffs have not alleged (and cannot allege) that they own a federal trademark registration for any of the asserted marks. Accordingly, to the extent Count II is an attempt to bring a claim under Section 32 of the Lanham Act, it must also be dismissed for this independent reason.

1.      **Plaintiffs Fail to Plausibly Allege Ownership of the Asserted Marks.**

Fundamentally, Plaintiffs' FAC misapprehends trademark law. The FAC repeatedly focuses on Mr. Maitland's alleged conception, design, and development of the purported marks. (DE 8 at ¶¶2, 13, 14, 19, 18, 20, 21, 38, 40 41, 43); and discusses his overall contribution to the NFL and NFLA (DE 8 at ¶ 21). These allegations, however, are immaterial and do not establish ownership of the trademark.  Trademark rights do not arise from conception or development of a mark. Instead, they arise from priority of use of mark in commerce. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:11 (4th ed. 2024) ("Rights in a trademark are gained through use before the relevant public in the marketplace, not through invention."); *see also Am. Exp. Co. v. Goetz*, 515 F.3d 156, 159-60 (2d Cir. 2008) (holding that entrepreneur who suggested a tagline to a credit card company did not himself use the slogan as a trademark because it did not designate the origin of any goods or services he offered); *Goldberg v. Cuzcatlan Bevs., Inc*., 250 B.R. 48, 53 (S.D. Fla. 2001) ("Ownership of a trademark depends on usage, not creation."); *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328 (M.D. Fla. 1998) (holding that a former director's conception of a mark did not grant him any rights in the mark, which was instead owned by the association); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) ("It is axiomatic in trademark law that the standard test of ownership is priority of use. . . the party claiming ownership must have been the first to actually use the mark in the sale of goods or services") (internal quotations omitted); *Chippendales USA, LLC v. Banerjee*, No. CV 23-8630 PA (PDX), 2025 WL 1674439, at *4 (C.D. Cal. May 13, 2025) (finding that regardless of the original ownership, movant has "exclusively and continuously used the marks in commerce since 2000 and is therefore the owner of the nine identified marks.").

Here, the FAC does not plausibly allege that Mr. Maitland ever **personally** offered goods or services using the marks. Whatever role he may have had in the conception of the Marks, the allegations of the FAC make clear that it was NFLA who used the marks in commerce (and, in the case of the alleged "NFL Alumni Logo" mark asserted by Plaintiffs, did so pursuant to a license granted to NFLA by the NFL Defendants). For example, the FAC repeatedly depicts an excerpt from the NFLA's Summer of 1977 *Time Out!* Magazine that announced that former NFL Commissioner "Pete Rozelle came to [NFLA's] rescue and gave [them] permission to use the famous NFL shield with the word ALUMNI across it." (DE ¶¶ 13, 18-19). While the FAC discussed Mr. Maitland's role in securing permission (*i.e..,* a license) for use the "famous NFL shield" as modified for limited purposes (*see, e,g,* DE 8 at ¶¶ 14, 41-43), nothing in these allegations would plausibly support the assertion that the license to the famous mark was granted to Mr. Maitland **personally** (as opposed to NFLA), much less that it transferred ownership in that mark such that Plaintiffs can now assert rights in the modified mark against the NFLA or the other defendants. That Mr. Maitland never **personally** held a license, much less **personally** used and owned trademarks rights in the asserted marks, is consistent with other documents referenced or incorporated into the FAC. (*See, e.g.,* DE 8 ¶ 43 (letter giving permission for logo use was addressed to Mr. Maitland at "NFL ALUMNI ASSOCIATION, INC."); DE 8 ¶ 64 (reference to a trademark application filed by NFLA on July 1, 1987, when Mr. Maitland was leading the organization, for registration of one of the asserted marks, which while abandoned (presumably due to conflict with marks owned by NFLP) suggests that NFLA understood that it and not Mr. Maitland owned the asserted marks); DE 8 ¶¶ 59-62 (discussing new licensing agreement between NFLP and NFLA entered into in 1993)).

Moreover, Plaintiff's primary "evidence" for Vic's "creation" of the NFLA logo – the April 4, 1979 letter from the NFL giving him the "go-ahead" – is not only addressed to Vic at the NFLA, but it also references (a) the NFL's financial support for an ***Alumni*** cocktail party and (b) reconversion of the association.  Like the logo, these are wholly related to corporate and not personal matters.  DE 8 ¶ 43.

Similarly, while asserting that Mr. Maitland was the force behind the tradition, the FAC alleges that it is "the National Football League Alumni"—not Mr. Maitland—that "presents the famed 'gold jackets' to each year's class of inductees into the Pro Football Hall of Fame." (DE 8 ¶ 21). Likewise, while the FAC includes scant information about the remaining asserted marks,[5] these alleged marks appear to have been used as "the mission and motto" of NFLA in the case of the alleged "Caring for Kids" mark (DE 8 ¶¶ 21, 54) or in connection with fundraising events or awards that are hosted or presented by NFLA in the case of "The NFL Alumni Charity Golf Tour," "NFL Alumni Player of the Year," "NFL Alumni Player of the Year Awards Dinner," and "The Order of The Leather Helmet" marks (DE 8 ¶¶ 20, 21, 54).[6]

---

[5] Apart from listing "The NFL Alumni Charity Golf Tour," "Caring for Kids," "NFL Alumni Player of the Year," "NFL Alumni Player of the Year Awards Dinner," and "The Order of The Leather Helmet" as marks being asserted in paragraph 1 of the FAC and a conclusory assertion, devoid of any factual support, that these marks have been used by four of the five Defendants in paragraph 53, the only other paragraphs in the FAC that makes any specific reference to these marks are paragraphs 10 and 29 (which reference "Caring for Kids" and depicts NFL Alum "Mission and Vision" statement), paragraph 20 (the only other paragraph that specifically references "The Order of the Leather Helmet"), and paragraph 21 and the Proclamation depicted in paragraph 54 of the FAC (which reference "Caring for Kids" and are the only other references to "The NFL Alumni Charity Golf Tour," and "NFL Alumni Player of the Year Awards Dinner"). (DE ¶¶ 1, 10, 20, 21, 29, 53, 54).

[6] Notably, despite alleging that the jackets and events are presented or hosted by PFHOF, the FAC nevertheless appears to assert claims against the NFLA related to the jacket and events, further evidencing that it remains an improper shotgun pleading that fails to distinguish between the five Defendants.

That Mr. Maitland helped launch these awards or programs during his service to NFLA or conceived of the underlying ideas and names for these programs does not give him rights in the asserted marks. *See, e.g.*, *Columbia Mill Co. v. Alcorn*, 150 U.S. 460, 463–64, 14 S.Ct. 151, 37 L.Ed. 1144 (1893) ("[T]he exclusive right to the use of the mark or device claimed as a trademark is founded on priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like articles of production."). To acquire common-law rights to a trademark, a party must have demonstrated prior use of the mark in commerce. See *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1131 (11th Cir. 2018) (quoting *Robi v. Reed*, 173 F. 3d 736 (9th Cir 1999)); *Crystal Entertainment & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) ("Common-law trademark rights are appropriated only through actual prior use in commerce.") (quotations omitted)).

This case is informed by the decision *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1131 (11th Cir. 2018). In that matter, the Plaintiff, the former member of a band, was involved in the development of its name and left the band. He did not perform for the band for years, though the band carried on under the name that was granted to it. Years later, and after not being associated with the band for years, the plaintiff sought to assert a common law ownership interest in the band. In addressing the issues on appeal, the eleventh circuit noticed that the member of the band failed to establish that he owned the marks at issue, because even though he may have been involved in the development and use of the mark, personally, the group had the priority of use with members of the public understanding the mark to apply to it, as opposed to its members. *Id.* The Eleventh Circuit further noted that because the plaintiff failed to be involved in a continuous basis with the band that the band continued to have and in fact had superior rights in

the marks.  Plaintiffs' claims stretch this principle even further given that as a former director and member Mr. Maitland was not a "partner" with the NFLA.

Similarly, *Compton v. Fifth Avenue Association, Inc.*, 7 F. Supp. 2d 1328 (M.D. Fla. 1998), is informative. In that case, Richard Compton, a former member of the Board of Directors of Shelter for Abused Women of Collier County had conceived of the name "Via Colori" for a street-painting festival and at Compton's suggestion, the Shelter's Board of Directors adopted that name for the event.  The Court granted summary judgment in favor of the Shelter finding that the Shelter, not Compton, was the owner of the mark. *Id.* at 1331-1332. The Court explained, "the fact that Compton first conceived of the mark 'Via Colori' is irrelevant to his ownership of the mark," as the entity that has used the mark was the Shelter, who had successfully established "Via Colori" as their signature event. *Id.*; *see also La. Ath. Down on the Bayou, L.L.C. v. Bayou Bowl Ass'n*, No. 11-303-BAJ-SCR, 2013 U.S. Dist. LEXIS 68582, at *2, 9, 24-26, 2013 WL 2102354 (M.D. La. May 14, 2013) (holding former Bayou Bowl Steering Committee member who allegedly created the name and concept of the Bayou Bowl in 2001 did not use the Bayou Bowl mark in commerce as there was no evidence that he "used the mark independent of his membership in the Bayou Bowl Steering Committee and in preparation for the 2003 game" that was "produced by committee or collaboration, not by Rigby alone"). As in those cases, the marks were not used by Mr. Maitland personally, but by NFLA (with the NFL Defendants' permission), and the marks have consistently been associated with the NFLA, and/or the NFL Defendants. Accordingly, Plaintiffs cannot establish that they own any of the marks asserted in the FAC.

**2.    Even Assuming *Arguendo* That Plaintiffs Could Establish Mr. Maitland Once Used and Owned the Marks, Any Rights He Had Were Long Ago Abandoned.**

As trademark rights are derived from use of a mark in commerce, trademark rights continue to exist only for so long as the owner of the mark continues to use the mark in commerce.

Trademark rights are lost if an owner ceases to use the mark in commerce. *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008); *Commodores Entm't Corp*, 879 F.3d at 1135–36 (11th Cir. 2018). Under the Lanham Act, a mark is deemed to be abandoned when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Moreover, the Lanham Act further provides that nonuse of a mark for three consecutive years "shall be *prima facie* evidence of abandonment." *Id.* (emphasis added). It also specifies that "use" of a mark "means the bona fide use of such mark in the ordinary course of trade." *Id.* Notably, the requisite intent to resume use of the mark "cannot be far-flung or indefinite" but must instead be an intent to resume within the reasonably foreseeable future. *Nat. Answers*, 529 F.3d at 1329.

Here, the FAC establishes a ***more than thirty-six-year*** period of nonuse by both Mr. Maitland and Plaintiffs, which constitutes *prima facie* evidence of abandonment. Specifically, the FAC alleges that Mr. Maitland's activities with respect to the marks occurred from approximately 1977 through 1988, when he stepped down from his 10-year tenure as head of the NFLA and that all use of the asserted marks by Defendants since 1989 ("some thirty-six years") has been infringing. (DE 8 ¶¶ 22; 44-45). It further alleges that Mr. Maitland passed away on November 29, 2019, and from 2012 until 2019, lacked the mental capacity to understand or act upon the purported infringement. (DE 8 ¶ 46).

Even assuming *arguendo* that Mr. Maitland once used and owned the trademarks asserted in the FAC (despite the factual allegations to the contrary as set forth above), those marks were long ago abandoned by Mr. Maitland. There has been no use of the marks by him or Plaintiffs for some thirty-six years, and there are no allegations in the FAC that would suggest Mr. Maitland had an intent to resume use of the mark in the reasonably foreseeable future, much less that such intent existed during every three-year period of nonuse. To the contrary, it does not allege any actions by

Mr. Maitland following 1989 that would evidence an intent to resume and even alleges that there was an approximately eight-year period from 2012 until 2019 during which he lacked mental capacity. Accordingly, even were this Court to find Mr. Maitland once had rights in the asserted marks, Plaintiffs' claims should alternatively be dismissed on the grounds that he abandoned the marks. *See, e.g., La. Ath. Down on the Bayou, L.L.C.*, 2013 U.S. Dist. LEXIS 68582, at \*27-29 (holding even assuming the plaintiff could attribute "use" of the Bayou Bowl mark to former Bayou Bowl Steering Committee member who was involved in planning the first Bayou Bowl game that took place in 2003, summary judgment in favor of defendant was still appropriate as more than three years had elapsed without plaintiff using the trademark); 15 U.S.C. § 1127, ("nonuse for three consecutive years shall be prima facia evidence of abandonment.")  While the defendant normally bears the burden of showing non-use for such a period, the failure, by the Plaintiffs to use the marks is apparent on the face of the FAC. There are no allegations showing that Mr. Maitland intended to resume use of them at any reasonable time prior to the filing of the FAC, there is a presumption of abandonment that has not been rebutted. *Island IP Acquisitions, LLC v. Spencer Antle, Island Co. LLC*, No. 22-CV-81293, 2024 WL 4029812, at \*5 (S.D. Fla. Aug. 19, 2024). Accordingly, the defense of abandonment clearly appears on the face of the FAC, such that it must be dismissed with prejudice.

### 3. The FAC Also Fails to Allege the Requisite Likelihood of Confusion.

Plaintiffs' Lanham Act claims must also be dismissed because Plaintiffs have not alleged that the NFLA have made unauthorized use of a mark or name in a manner likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. 15 U.S.C. § 1125(a)(1).  Section 43(a) does not protect against alleged confusion as to who conceived of or designed a product or service. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23,

32-33 (2003), ("In sum, reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations . . . and in light of the copyright and patent laws, we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."). *See also La. Ath. Down on the Bayou, L.L.C.*, 2013 U.S. Dist. LEXIS 68582, at *16 (explaining that the Lanham Act does not protect the source of content or create a cause of action for plagiarism (*e.g.*, use of works without attribution), as consumers do not assume or care whether the idea for a branded product originated from a particular person or entity).

Here, each of the Counts asserted against the NFLA allege that by "use of the mimicked and copied Marks to promote their brands since 1989," they have falsely promoted and designated their goods, services, and products "as being their own when, in fact, those NFLA Infringing Products contain the mimicked, copied, and misappropriated Marks and Intellectual Property owned by Vic, and now the Estate" and "falsely associate and falsely suggest to consumers, including millions of NFL fans, that they created and are the genuine owners and designers of the mimicked Marks used for the NFLA Infringing Products; palm off the use of the mimicked, copied, and misappropriated Marks in their NFLA Infringing Products as their own, and commit acts of unfair competition to obtain and scheme together to eliminate Vic's legacy and true identity as the 'Man Behind the Gold Jacket' and other Marks.".

Critically, Plaintiffs do not claim that any consumers are likely to be confused by the NFLA's alleged conduct as relates to Vic, but only that consumers are unaware of Mr. Maitland's role in the creation of the purported marks. In *Dastar Corp.*, however, the Supreme Court explicitly held that such allegations do not support a claim under the Lanham Act. 539 U.S. at 32-33. Accordingly, even if Plaintiffs could establish ownership of the purported marks (which they

cannot), the FAC still would fail to state a claim as it has not alleged an actionable likelihood of confusion under the Lanham Act, nor does it show how the Plaintiff has suffered any damages.

### 4. Plaintiffs' Claims Are Barred by The Doctrine of Laches and Acquiescence

In addition to failing to state a claim, Plaintiffs' claims should be dismissed due to Plaintiffs' decades-long delay in bringing suit, and acquiesce to the use of the marks.

The FAC alleges that the infringement of the marks commenced in 1989 (after Mr. Maitland stepped down from his 10-year tenure as head of NFLA) but that the NFLA was using the marks commencing in 1977, without explaining why the prior use was not infringement. (DE 8 ¶¶ 22, 39, 44-45, 51-52, 123). Taking the facts in a light most favorable to the Plaintiff, the purported infringement commenced more than thirty-six years ago. The FAC also alleges that Mr. Maitland (who would be Plaintiffs' key witness as to the allegations set forth in the FAC) passed away on November 29, 2019, at the age of ninety-eight, and that from 2012 until 2019, Mr. Maitland lacked the mental capacity to understand or act upon Defendants' alleged infringement of the asserted marks. (DE 8 ¶ 46). Even setting aside the question of Mr. Maitland's capacity between 2012 until his death in 2019, there was at least twenty-three years in which Mr. Maitland had the capacity to act and chose not to do so. There was also a five-year delay following Mr. Maitland's death.

Although "[t]he Lanham Act does not contain a statute of limitations," the equitable doctrine of laches may bar a claim for trademark infringement. *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). To successfully assert a defense of laches, a defendant must show: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Id*. While laches is an affirmative defense, dismissal is nonetheless appropriate under

where the affirmative defense "clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit*, 727 F.2d 1067, 1069 (11th Cir. 1984); *see also Secret of the Islands, Inc. v. Hymans Seafood Co.*, No. 2:17.cv-342-BHH, 2019 U.S. Dist. LEXIS 29122, at *23-30, 2019 WL 917209 (D.S.C. Feb. 25, 2019) (dismissing Lanham Act claims under Rule 12(b)(6) where the amended complaint indicated a nearly five-year delay in bringing suit and explaining that the Plaintiff had "indeed, pled itself out of court by demonstrating unreasonable delay and undue prejudice to Defendants on the face of the amended complaint").

The FAC establishes that there was at least a ***thirty-six-year delay*** (and potentially forty-eight year delay) in bringing suit. Delay is generally calculated from the moment a plaintiff knows or should have known of its infringement claim. *See Pinnacle Advert. & Mktg. Grp.*, 7 F.4th at 1006. Here, Mr. Maitland knew of his claim in 1989, after he stepped down from his 10-year tenure as head of the NFLA and the infringement is alleged to have begun. (DE 8 ¶¶ 22, 39, 44, 51, 123). Notably, the FAC alleges that Mr. Maitland created the asserted marks as part of a "sweeping reinvention plan" and "change in brand and corporate image" for NFLA and the NFLA's Summer of 1977 *Time Out!* Magazine (which is alleged to contain Mr. Maitland's trade dress and concepts) touts these as "THE NEW NAME AND LOOK OF THE NFL ALUMNI." (DE 8 ¶¶ 8-13, 17-19, 38). As these asserted marks were allegedly created as part of a rebranding of NFLA and in connection with annual traditions and events (such as awarding gold jackets to inductees into the Pro Football Hall of Fame) (*see, e.g.,* DE 8 ¶¶ 20-21), Mr. Maitland would have known that use of these marks would continue after he stepped down from his leadership role in 1988. That Mr. Maitland was well aware that use of the marks continued after his departure is further evidenced by the honor he was bestowed on January 27, 2001, when NFLA proclaimed him a "LIFETIME HONORARY PROFESSIONAL MEMBER," awarding him a certificate showing the NFLA logo

and discussing his contributions to NFLA, including in establishing the NFL Alumni Charity Golf Tour and NFL Alumni Player of the Year Award Dinner and being the driving force behind the gold jackets awarded each year to inductees into the Pro Football Hall of Fame. (DE 8 ¶ 54).

Likewise, there is no excuse for Plaintiffs' egregious multi-decade delay in bringing suit. Even if one discounts the period from 2012 until Mr. Maitland's death in 2019, when Mr. Maitland allegedly lacked capacity to bring suit (DE 8 ¶ 46), there is still a delay of nearly 30 years, in addition to the delay from 1977 (which is when the NFLA first started using the marks) through 2009, when Maitland lost competency.

Finally, that the NFLA was and is prejudiced by Plaintiffs' delay in bringing suit is clear on the face of the FAC. "Courts have previously recognized two categories of prejudice caused by a delay in bringing a trademark infringement suit—evidentiary prejudice and economic prejudice." *Pinnacle Advert. & Mktg. Grp.*, 7 F.4th at 1010. Evidentiary prejudice includes such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died, while economic prejudice encompasses actions made by the defendant that it would not have taken or consequences it would not have experienced had the plaintiff promptly brought suit. *Id.* Both are present here.

Here, arguably the most critical witness is Mr. Maitland, who had knowledge of the creation and implementation of the alleged marks and elected not to personally file suit during his lifetime (perhaps because he understood that he had no claims), but passed away in 2019. Had there been no delay, Mr. Maitland could have provided testimony and been cross-examined regarding the allegations now asserted by Plaintiffs. (DE 8 ¶ 46). This alone indisputably establishes evidentiary prejudice.  Frankly, this also suggests that it is just as likely that Mr. Maitland chose not to bring these claims because they have no basis as he was aware that any

ability to use the Marks rested with the organization per discussions with the NFL. Of course, it is not just Mr. Maitland's unavailability that prejudices NFLA. The allegations relating to Mr. Maitland's alleged ownership of the mark in the FAC date back to 1977 (almost 50 years), which is a long time for witnesses' memories to fade, witnesses to have passed away, or documents to have been lost or destroyed. (*See, e.g.,* DE ¶ 14). Not surprisingly, virtually all the significant persons identified by Plaintiffs in the FAC who would have first-hand knowledge of the facts alleged by Plaintiffs have passed away.[7] Plaintiffs cannot dispute that their thirty-six-year delay in bringing suit caused significant evidentiary prejudice. Further, the allegations of the FAC also establish economic prejudice, alleging (among other things) that Plaintiffs are entitled to damages based on NFLA's purported use of the marks for more than forty years.

If ever there was a case in which the affirmative defense of laches was clear on the face of the complaint, this is it. Plaintiffs inexcusably delayed some thirty-six years in bringing suit, as a result of which there is significant evidentiary prejudice to the NFLA, as well as economic harm, given the continuous use by the NFLA since the late 1970s. Accordingly, Plaintiffs have "pled [themselves] out of court by demonstrating unreasonable delay and undue prejudice to Defendants on the face of the amended complaint." *Secret of the Islands, Inc.*, 2019 U.S. Dist. LEXIS 29122, at *23-30.

---

[7] By way of example, Pete Rozelle, the former Commissioner of the NFL who allegedly met with Mr. Maitland regarding the gold jacket and granted permission with respect to the alleged NFL Alum logo (*see* DE 8 ¶¶ 14, 18, 20, 41-43, 57), passed away in 1996. Similarly, Bill Chip (*see* DE 8 ¶¶ 6-8) passed away in 1992; Bill Dudley (*see* DE 8 ¶¶ 13-14) passed away in 2010; Sylvan Landau (*see* DE 8 ¶¶ 33-34, 106) passed away in 2010; William J. Ray (*see* DE 8 ¶¶ 43, 57) passed away in 1986; and Bill Bidwell (*see* DE 8 ¶ 43) passed away in 2019. Had Mr. Maitland timely filed suit when the infringement allegedly commenced in 1989, all of these individuals (with the exception of Mr. Ray) would have still been living.

Not only do these allegations establish laches, but they also support the affirmative defense of acquiescence. Acquiescence is a statutory defense under 15 U.S.C. § 1115(b)(9) that requires proof of three elements: (1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1207 (11th Cir.2008) (citation and quotation omitted). Active consent" does not necessarily mean an explicit promise not to sue. It only requires "conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547–48 (10th Cir.2000); *see also Coach House Rest., Inc. v. Coach & Six Rests*., Inc., 934 F.2d 1551, 1558, 1564 (11th Cir.1991).

Here, among other allegations in the FAC, the proclamation, naming and awarding Maitland a lifetime membership to the NFLA, referenced in Paragraph 54, affirmatively shows that Maitland knew about the purported infringing use of the NFLA of the marks from 1989 through 2001, and that he did not object to its continued use. The proclamation further confirms that Maitland did not intend to otherwise sue the NFLA which further establishes, on the face of the FAC the affirmative defense of acquiescence.

**D.    For The Same Reasons Set Forth Above, Plaintiffs' Claim for Violation of Florida's Deceptive and Unfair Trade Practice Act Fails to State a Claim.**

Unlike claims for violations of the Lanham Act, claims under Florida Deceptive and Unfair Trade Practice (FDUTPA) have a four-year statute of limitations, and even if the claims are based on fraudulent misconduct. Fla. Stat. § 95.11(3)(e); *see also Sclar v. OsteoMed, L.P.*, No. 17-23247-CIV-MORENO, 2018 U.S. Dist. LEXIS 11373, at * 7 2018 WL 559137 (S.D. Fla. Jan. 24, 2018). The statute of limitations ran on Plaintiffs' FDUTPA claim no later than 1993 (more than thirty

years ago). Even if the claims were based on fraudulent misconduct, they would still have expired in 2001. Fla. Stat. § 95.031(2)(a).

Not only are Plaintiff's FDUPTA claims time barred, but they also fail to state a claim upon which relief can be granted. The FAC alleges that the Plaintiffs suffered reputational damages, and it alleges some form of lost profits, but does not allege any form of actual damages that were suffered, as such damages are consequential. *Krupa v. Platinum Plus, LLC*, No. 8:16-CV-3189-T-33MAP, 2017 WL 1050222, at *7 (M.D. Fla. Mar. 20, 2017) (citation and quotation marks omitted). However consequential damages cannot be recovered with respect to a claim for violations of FDUPTA. *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 201). Because such damages were not pled, the FDUPTA claims must be dismissed as well. *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (citations and internal quotation marks omitted); *BPI Sports, LLC v. Labdoor, Inc.*, No. 15-62212-CIV-BLOOM, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (citation and internal quotation marks omitted).[8]

## CONCLUSION

After the NFLA has been using the marks at issue for more than forty years, the successors in interest of Mr. Maitland have sued the NFLA, the NFL Defendants and the other Defendants based on a tortured interpretation of trademark law. While the Plaintiffs have attempted to confuse

---

[8] And, to the extent that the FDUPTA claim is based on Defendants' alleged trademark infringement and relies on the same underlying facts, Plaintiffs' state law claim must be dismissed for the same reasons set forth above. *See Nat. Answers, Inc.*, 529 F.3d at 1328 (holding that where plaintiff "cannot succeed on its Lanham Act claims," its claims under Florida law "necessarily fail"); *Marco's Franchising, LLC v. Marco's Italian Express, Inc.*, No. 8:06-cv-00670-T-17-TGW, 2007 U.S. Dist. LEXIS 49211, at *9-10, 2007 WL 2028845 (M.D. Fla. July 9, 2007) (same). In any case, Plaintiffs' FDUTPA claim must be dismissed.

issues to state a claim, they have simply filed a shotgun pleading which, on its face, fails to plead any claim for relief. As such the FAC must be dismissed, **with prejudice.**

Respectfully submitted,

| | |
|---|---|
| **MILLENNIAL LAW** | **JENSEN LAW FIRM LLC** |
| *Attorneys for NFLA* | *Attorneys for NFLA* |
| 320 SE 11th Street | 233 Mount Airy Road, Suite 133 |
| Fort Lauderdale, FL 33316 | Basking Ridge, NJ 07920 |
| Phone: 954-271-2719 | Phone: 908-758-1265 |
| | |
| By: _s/ Zachary P. Hyman_____ | By: _s/ Christian Jensen_____ |
|     Zachary P. Hyman |     Christian Jensen |
|     Florida Bar No. 98581 |     *Pro Hac Vice* |
|     zach@millenniallaw.com |     christian@jensenfirm.com |
|     jessica@millenniallaw.com | |
|     assistant@millenniallaw.com | |

<u>**CERTIFICATE OF SERVICE**</u>

    **I HEREBY CERTIFY** that foregoing was filed using the CM/ECF Filing system which in turn sent notice of electronic filing to all parties registered to receive notice of electronic filing on this **<u>14th</u>** day of October 2025.

                      */s/ Zach Hyman*_____

                      Zachary Hyman, Esq.

                      Fla. Bar No.: 98581