# THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-80981-cv-DMM

KATHERINE M. LASSEN AND JAMES
V. MAITLAND, AS PERSONAL
REPRESENTATIVES OF THE ESTATE OF
VICTOR I. MAITLAND,

             Plaintiffs,

v.

NFL PROPERTIES LLC, NATIONAL
FOOTBALL LEAGUE, NATIONAL
FOOTBALL LEAGUE ALUMNI, INC.,
NATIONAL FOOTBALL MUSEUM INC.
d/b/a PRO FOOTBALL HALL OF FAME,
AND HAGGAR CLOTHING CO.,

             Defendants.

## DEFENDANT HAGGAR CLOTHING CO.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## PRELIMINARY STATEMENT

This Amended Complaint is premised on an impossibility: that the National Football League and Professional Football Hall of Fame's trademarks, traditions, and accolades do not inure to the benefit of those organizations, but to a single individual. Plaintiffs contend that iconography like the gold jacket awarded to Professional Football Hall of Fame enshrinees, and crests worn by alumni of the National Football League, should not identify the wearers' accomplishments or careers, but can only serve to reference one person: Vic Maitland. Contrary to Mr. Maitland's purported "love of the game," the Amended Complaint filed by Mr. Maitland's estate six years after his death now claims that any use of these NFL and professional football insignia that do not identify Mr. Maitland is infringing, false, and deceptive – even uses that the NFL and the Professional Football Hall of Fame have expressly authorized for decades. It is clear from the Amended Complaint that Mr. Maitland does not own the rights at issue. Mr. Maitland never claimed to own these rights during his lifetime, nor could he, and his Estate cannot do so now.

Haggar Clothing Co. ("Haggar") has been proud to manufacture and outfit our country's most accomplished professional football players with their gold jackets since 1978. Like the professional football legends who must earn the rights to wear them, Haggar has worked diligently and expended significant resources to obtain, and maintain, the exclusive rights required for its designation as the Exclusive Provider of the Hall of Fame Gold Jacket. As a licensee, Haggar's hard work inures to the benefit of the institutions from whom these rights were granted. Plaintiffs' Amended Complaint casts no doubt on Haggar's authorization to make gold jackets and make true and accurate statements about those actions. Plaintiffs offer no legal or factual basis to disrupt a prominent business relationship that has been in place for nearly half a century. For the reasons discussed below, Plaintiffs fail to state a cause of action against Haggar, and all claims against Haggar in the Amended Complaint should be dismissed with prejudice.

2

## FACTUAL BACKGROUND

The named Plaintiffs bring this case on behalf of the Estate of Vic Maitland (the "Estate"). Nearly forty years after Mr. Maitland's departure from the NFL Alumni Association ("NFLAA") and six years after his death, his Estate seeks, for the first time, to challenge well-established third-party trademark rights and licensing relationships in the pursuit of purported damages Mr. Maitland never sought during his lifetime. Vic Maitland ("Mr. Maitland") was a former National Football League ("NFL") player during the 1940s, and the Amended Complaint provides that he led the NFLAA from the 1970s until his departure in or about 1988. Mr. Maitland passed away on November 29, 2019. *See* Amended Complaint ("Compl.") ¶¶ 3, 11, 46.

Per the Amended Complaint, Mr. Maitland was a leader of the NFLAA, acting as the organization's "head" for nearly 10 years. *Id.* ¶¶ 11, 16. In connection with his work at the NFLAA, Mr. Maitland conducted business on the organization's behalf. *Id.* ¶ 13. The NFLAA was incorporated as a nonprofit in 1978 purportedly under Mr. Maitland's leadership, *id.* ¶ 9, Mr. Maitland purportedly registered a "fictitious name" on behalf of the Alumni Association, and purportedly received correspondence and funds in his role at the NFLAA. *Id.* ¶¶ 15, 43.

The NFL and affiliated organizations, including the NFLAA, have used and display logos and insignia to identify the NFLAA organization, its membership, and its causes. Two purported "marks" are relevant to this motion: the NFL Alumni Association's shield logo (the "NFL Alum Logo Mark"), and the "concept and trade dress 'Gold Jacket'" (the "Gold Jacket"). *See* Compl. ¶¶ 9, 10. Plaintiffs concede that the NFLAA's logo and other indicia were created by an "artist" and use pre-existing intellectual property, including, under license, "the famous NFL shield." *Id.* ¶ 8, 18, 56. The NFLAA purportedly received approval from William Ray, treasurer of the National Football League, to revise the NFLAA's logo. *Id.* ¶ 43. The NFLAA's trademarks, concepts, and themes include logos and membership indicia such as rings, blazers, patches, and ties specifically

for the purpose of signifying membership in the NFL Alumni organization, and different tiers of such membership. *Id.* ¶ 13. For example, the NFLAA distinguished levels of organization through the color of blazers distributed to members and honorees: "blue for regular members, maroon for associate members, and gold for Hall of Fame members." *Id.*

The NFLAA has likewise authorized third parties to use its trademarks, concepts and themes. Haggar has been authorized to manufacture the gold jackets worn by members of the Pro Football Hall of Fame since 1978 pursuant to a contract purportedly negotiated by Mr. Maitland himself, and confirmed on multiple occasions, including purportedly via communications and meetings occurring in the late 1970s and 1985. *Id.* ¶ 31, 33, 34. That contract has been "extended," allowing Haggar to "continue as the exclusive provider of the Hall of Fame gold jacket" to this day. *Id.* As authorized, Haggar has proudly manufactured and fitted gold jackets for Pro Football Hall of Fame members for nearly fifty years. Only alumni of America's professional football league are entitled to membership in the organization's alumni association, and only Hall of Fame enshrinees may wear Hall of Fame gold jackets, which are not available for purchase.

After Mr. Maitland left the NFLAA in 1989, *id.* ¶ 45, the NFLAA continued to use, license, change, and develop new trademarks and concepts. *Compare id.* ¶ 44 (1979-1988), *with* ¶ 48 (1989-2010), *and* ¶ 49 (2011 or 2012-present). Since 2012, the shield and gold jacket used to honor HOF enshrinees differ from the designs that the Estate claims Mr. Maitland was involved with, and no longer reference the NFL or the NFLAA. *Id.* ¶ 49. Per the Estate, after 2012, Mr. Maitland was not mentally competent and was incapacitated until his death in 2019. *Id.* ¶¶ 45, 46.[1]

---

[1] Plaintiffs offer no documentation in support of their authorization to bring suit, but, for purposes of this motion, Haggar accepts all facts pled as true in line with Rule 8 requirements. To the extent such authorization does not exist or was granted during the period of Mr. Maitland's purported mental incapacity, Haggar reserves all rights to seek dismissal as the Rules permit.

**ARGUMENT**

**I.      Plaintiffs Fail to State a Cause of Action Against Haggar.**

Plaintiffs have not stated, and cannot state, causes of action against Haggar. Plaintiffs do not own the rights they assert and cannot plausibly allege that consumers are misled by the licensed use of trademarks and indicia that solely serve to reference the NFL and its alumni or the HOF and its enshrinees.  A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and must give the defendant fair notice of the asserted claim and the grounds upon which it rests. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2003). Failure to plead beyond speculation warrants dismissal. *See Harrington v. Veritext, LLC,* No. 24-CV-22787, 2025 WL 1591614, at *2-4 (S.D. Fla. May 1, 2025) (dismissing Amended Complaint because claims were "conclusory and do not include specific facts to support all essential elements"). FDUPTA claims may be dismissed for failure to satisfy the requirements of Rule 8(a). *See e.g., Fed. Trade Comm'n v. Am. Precious Metals, LLC*, No. 11-61072-CIV, 2012 WL 13114034, at *5 (S.D. Fla. Apr. 12, 2012) (quoting *Kenneth F. Hackett & Assocs. V. GE Capital Info. Tech*., 744 F. Supp. 2d 1305 n.4 (S.D. Fla. 2010) ("The proper pleading standard for a FDUTPA claim is Rule 8(a).").

**A.      Plaintiffs Fail to Plead Trademark Infringement (Count IV).**

Plaintiffs' trademark infringement allegations misunderstand black-letter law and fail to state a cause of action against Haggar's authorized and licensed trademark use. "To survive a motion to dismiss based on Trademark Infringement . . . a plaintiff must allege sufficient factual matter to plausibly suggest that: (1) it owns the trademark at issue; (2) defendants used the marks without authorization; and (3) defendants' use is likely to cause confusion, mistake or deception

as to the source, affiliation, or sponsorship of defendants' goods." *Pentair Filtration Sols., LLC v. Superior Water Sys., Inc.,* No. 12-62163-CIV, 2013 WL 12091624, at *1 (S.D. Fla. May 2, 2013) (internal citations omitted); *see also Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir.), *opinion modified on reh'g,* 122 F.3d 1379 (11th Cir. 1997). Plaintiffs fail to plausibly establish any of these elements.

<u>First</u>, "[t]o bring an infringement claim under the Lanham Act, a plaintiff must hold a valid trademark," and Plaintiffs cannot meet that requirement. *Sprint Commc'ns, Inc. v. Calabrese*, No. 18-60788-CIV, 2021 WL 9859768, at *4 (S.D. Fla. Oct. 14, 2021), *on reconsideration in part,* No. 18-CV-60788, 2022 WL 457829 (S.D. Fla. Jan. 10, 2022) (internal citations omitted). The Amended Complaint cannot plausibly allege Mr. Maitland's ownership of trademark rights in the NFL Alum Logo Mark and the Gold Jacket, and in fact, contradicts that conclusion.

Plaintiffs' claims that Mr. Maitland was involved in the creation of the purported marks at issue are not sufficient to establish trademark rights. Trademark rights belong to the entity who uses a mark in commerce and serves as a product or service's source. *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.,* 293 F. Supp. 3d 1334, 1367 (M.D. Fla. 2017) ("Neither conception of the mark nor advertising alone establishes trademark rights at common law. Rather, ownership of a trademark accrues when goods bearing the mark are placed on the market.") (internal quotations omitted).[2] The Amended Complaint is unambiguous that the NFL Alum Logo Mark and Gold Jacket were developed and used for and by the NFL and/or its affiliate organizations, inuring to their benefit. Plaintiffs' cited articles and press releases reinforce this: cited articles come from and

---

[2] Even Plaintiffs' factual claim that "Vic created" the marks at issue is contradicted by their concession that the designs were created not by Mr. Maitland, but an unnamed "artist." *See id.* ¶¶ 13, 19, 38, 56. Plaintiffs would face similar, insurmountable hurdles to copyright claims, and also could not establish that the "concept of a gold jacket" is protectable, as copyright does not extend to concepts, ideas, useful articles, or single colors. See id. § 102(b); see also 37 C.F.R. § 202.1(a).

reference the NFLAA (Compl. ¶¶ 18-19), correspondence to Mr. Maitland is addressed to the "NFL ALUMNI ASSOCIATION, INC." (*id.* ¶ 43), and the "marks" at issue were "used by the NFL, NFL Alum and the HOF" (*id.* ¶ 44).

Even if the Amended Complaint somehow sufficiently pled that Mr. Maitland owned trademark rights in the NFL Alum Logo Mark and Gold Jacket, any such trademark rights have long gone abandoned. Mr. Maitland purportedly ceased use of his purported marks in 1988, and that Defendants purportedly began infringing the marks in 1989—after Vic left the NFL Alumni—and have continued to use the purported marks without objection until the present. Compl. ¶¶ 22, 45-46. Under the Lanham Act, a trademark is deemed abandoned, and thus no longer valid, "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. The statute further provides that "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." *Id.*; *see also Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.,* 304 F.3d 1167, 1174 (11th Cir. 2002); *Superior Consulting Servs., Inc. v. Shaklee Corp.,* No. 616CV2001ORL31GJK, 2017 WL 2834783, at *4 (M.D. Fla. June 30, 2017) (holding that Defendant had sufficiently pled abandonment under the Lanham Act). If Mr. Maitland owned any trademark rights in the purported works, those rights were presumptively abandoned by 1992—three years after the last asserted use.

In this context, Plaintiffs fail to plausibly allege that Haggar used the Marks without authorization. The Amended Complaint acknowledges that Haggar was expressly authorized, through a contract allegedly negotiated by Mr. Maitland, to "supply the 'Gold Jackets.'" Compl. ¶¶ 33, 34. That same contract was extended over the ensuing years, allowing Haggar to "continue as the Exclusive Provider of the Hall of Fame Gold Jacket." *Id.* Plaintiffs cannot credibly assert

that Haggar's use of the Marks was unauthorized when Plaintiffs plead the existence of a contract, negotiated and endorsed by Mr. Maitland himself, authorizing Haggar's use.

Finally, Plaintiffs do not and cannot plausibly plead how Haggar's conduct constitutes trademark infringement. *See D.B.C. Corp. v. Nucita Venezolana, C.A.,* 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (dismissing infringement claim for failure to explain how defendant's marks infringed). Plaintiffs do not dispute that Haggar does, in fact, manufacture the Gold Jackets presented to Pro Football Hall of Fame enshrinees – that Haggar makes the Gold Jacket is an indisputable truth. Instead, Plaintiffs claim that the NFLAA and Hall of Fame's indicia should not be associated with those organizations, and that Haggar should not be able to factually represent that it manufactures the Gold Jackets. For unarticulated reasons, Plaintiffs allege that this goodwill should somehow inure to the benefit of Mr. Maitland alone. Compl. ¶ 149 (pleading Haggar's "deception among the general consuming public, including millions of NFL fans, and the football world as a whole, as to whether the Haggar Infringing Products bearing or using its versions of the Marks originate from, or are affiliated with, sponsored by, or were created, designed, first used, or were endorsed by Haggar, rather than Vic who designed, created and first launched the Marks."). Broad and unsupported assertions like these are insufficient to survive a motion to dismiss, and orders in this district have dismissed claims based on mere conclusory statements that lack factual support. *See e.g., Tracfone Wireless, Inc. v. Simply Wireless, Inc.,* 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2016) ("Although detailed factual allegations are not required, Plaintiff must allege sufficient facts, not mere conclusory allegations, in a manner that comports with the Federal Rules of Civil Procedure.") (internal quotations omitted). The only party introducing any confusion here is Plaintiffs, and their Lanham Act claims should be dismissed.

**B.      Plaintiffs Fail to Allege False Designation of Origin, False Association, and False Advertising under the Lanham Act (Count VIII).**

Plaintiffs shoehorn multiple theories of liability into Count VIII, none of which are sufficient to state a cause of action against Haggar for making truthful and accurate statements. Plaintiffs fail to plead that Haggar engaged in any deceptive act. Section 1125(a) of the Lanham Act creates two distinct bases of liability: false association (15 U.S.C. § 1125(a)(1)(A)) and false advertising, (15 U.S.C. § 1125(a)(1)(B)), both of which require misrepresentation of a defendant's goods. *Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 579 (11th Cir. 2017). False association requires showing that an affiliation, connection or sponsorship is likely to cause consumer confusion about the connection or relationship between the defendant's good and another person or entity, and false designation of origin is premised on misrepresenting a product's source. 15 U.S.C. § 1125(a)(1)(A); *Black Diamond Land Mgmt. LLC*, 707 F. App'x at 579.

There is no misrepresentation here. Plaintiffs' allegations against Haggar concern its purported statements that it has been "supplying the Gold Jackets since 1978." *See* Compl. ¶¶ 31-34. But this is <u>not false</u>, even according to the Amended Complaint, which acknowledges that "the first contract with Haggar to supply the 'Gold Jackets'" was "[i]n 1978," and that Mr. Maitland was aware of "Haggar's exclusive agreement to supply the Gold Jackets" in 1985. *See* Compl. ¶¶ 33-34. Haggar's statements about being the "exclusive producer of the gold jackets since 1978," which is properly conveyed through Haggar's website advertising, *id.* at 31-32, are not false or deceiving, and Plaintiffs' claim otherwise must be dismissed. To the extent Plaintiffs allege such statements are false by implication or omission, Plaintiffs fail to establish how a third-party's statement that Haggar creates the Gold Jacket (literally true), *see* Compl. ¶ 107, or how failing to mention Mr. Maitland (one of any number of individuals involved with the Gold Jacket) creates an actionably false or misleading implied statement by Haggar. *See, e.g., Strong Current Enters.*

*Ltd. v. Affiliati Network, Inc.*, No. 20-CV-23692-UU, 2021 WL 1383369, at \*4 (S.D. Fla. Jan. 26, 2021) (dismissing advertising claim for failure "to plead any facts supporting the necessary elements of a deception that had a material effect on purchasing decisions"); *Wesley Fin. Grp., LLC v. Westgate Resorts, Ltd.*, 746 F. Supp. 3d 1342, 1351 (M.D. Fla. 2024) (dismissing omission claim for failure to detail deception). Claims of implied falsity must be supported by evidence that consumers, in fact, make the pled inference and are misled by it – also missing from the pleadings here. *See Piescik v. CVS Pharmacy, Inc.*, 576 F.Supp.3d 1125, (S.D. Fla. Dec. 15, 2021) (dismissing Lanham Act and FDUTPA claims based on failure to allege material misrepresentation and the claims' conclusory and implausible nature; denying leave to amend as futile).

Plaintiffs' false advertising claim fails for largely the same reasons: there is no falsity or deception. Under 15 U.S.C. § 1125(a)(1)(B), a plaintiff has the burden of proving that (1) the defendant made a false or misleading statement of fact; (2) the statement deceived or had the capacity to deceive consumers; (3) the deception has or had a material effect on consumer purchasing decisions; (4) the misrepresented goods or services affect interstate commerce; and (5) the plaintiff has been or likely will be injured as a result of the false or misleading statement. 15 U.S.C. § 1125(a)(1)(B); *Duro Beam, LLC v. Manning*, No. 24-CV-81550-WPD/BER, 2025 WL 2416413, at \*3 (S.D. Fla. Aug. 21, 2025), *report and recommendation adopted*, No. 24-81550-CIV, 2025 WL 2576706 (S.D. Fla. Sept. 5, 2025). Plaintiffs' false advertising claim is premised on purported materials from Haggar's homepage, noting that Haggar "cross-advertises, promotes, and capitalizes from its role as supplier of the Gold Jackets since 1978 . . ." Compl. at ¶ 32. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. While the nature of the term "capitalizes" is unclear, Haggar does not dispute the true statement that it supplies Gold Jackets and has done

so since 1978. The conclusory statement that "Defendants' use of the spun and mimicked Marks has caused, and will likely continue to cause, actual confusion in the marketplace," with no explanation of how Haggar's conduct and accurate statements cause the alleged confusion, does not negate the absolute truth or support a claim of deception. *Id*. ¶ 36.

Plaintiffs also fail to plausibly plead the requisite injury or harm to support Count VIII. Harm is only presumed for comparative advertising or literal falsity claims under 15 U.S.C § 1125(a); otherwise, a plaintiff must affirmatively plead and prove harm. *See, e.g., Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) ("[O]nce a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception."). To the extent Plaintiffs' claims are for falsity by implication or omission, their allegations of harm are conclusory, speculative, and devoid of facts, and do not connect how Haggar's cited advertising has led to any specific actionable harm. Moreover, the posthumous reputational damages that Mr. Maitland's estate seeks are not sufficient. *See Rudnikas v. Gonzalez*, No. 1:23-21201-CIV-MARTINEZ/SANCHEZ, 2024 WL 4635529, at *9 (S.D. Fla. Sept. 6, 2024) ("As a threshold issue, the Plaintiff does not plead an injury to a commercial interest in sales or business reputation . . . The Plaintiff claims as his injury posthumous 'damages to the goodwill reputation of [the] Plaintiff's father.' Thus, the alleged injury is only to the personal reputation of the Plaintiff's late father . . . not to any commercial interest.") (internal citations omitted) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140. (2014)).

### C.    Plaintiffs' FDUTPA Allegations Fail to State a Cause of Action (Count XII).

Plaintiffs' FDUTPA allegations fail along with their Lanham Act claims and are independently dismissible for failure to state a cause of action. *See, e.g., KVC Ests. IV, LLC v. Lopez,* No. 1:23-CV-24891-JB, 2025 WL 662657, at *5 (S.D. Fla. Feb. 13, 2025), *report and*

*recommendation adopted*, No. 23-CV-24891-JB, 2025 WL 659858 (S.D. Fla. Feb. 28, 2025) ("Plaintiffs' Florida common law and FDUTPA claims similarly rise or fall with Plaintiffs' ability to plausibly allege ownership rights over the Mark."). "Under FDUTPA, a claimant must satisfy three elements to allege a viable claim. . .: '(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages.'" *Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, No. 19-24857-CIV, 2020 WL 2494608, at *3 (S.D. Fla. May 14, 2020) (internal citations omitted).

As with their Lanham Act claims, Plaintiffs fail to plausibly allege false or misleading statements by Haggar. *See Kurimski v. Shell Oil Company*, 570 F.Supp.3d 1228, 1246 (S.D. Fla. Nov. 8, 2021) (dismissing FDUTPA claims, finding implied false advertising to be implausible, particularly given the presence of accurate information). Plaintiffs also do not adequately plead actual damages, merely stating that "Haggar has been unjustly enriched to the detriment of Vic, and now the Estate. Defendant's unlawful actions have caused Plaintiffs' substantial monetary damage in an amount presently unknown." Compl. ¶ 196. This vague and conclusory statement is insufficient to plead actual damages under FDUTPA, and actual damages under the FDUTPA "do not include consequential damages." *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.,* No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (citing *Kia Motors America Corp. v. Butler,* 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008)). Plaintiffs' claim must be dismissed.

**D.**    **Plaintiffs Seek Overbroad and Unrecoverable Relief.**

Exacerbating its shotgun pleading approach, the relief requested in the Amended Complaint (notably unchanged from the original complaint) is overbroad and unrecoverable. Maitland inappropriately seeks a "trebled" award of Defendants' profits pursuant to 15 U.S.C. § 1117 and "Florida law," and "statutory damages" under § 1117. Compl. at Prayer (4). By its terms, § 1117 generally predicates treble damages and statutory damages on the use of a "counterfeit mark or designation." 15 U.S.C. §§ 1117(b)-(c). Plaintiffs' claims for "<u>unregistered</u> trademark

infringement," *see* Compl. ¶¶ 127, 135, 143, 151 (emphasis added), cannot support a cause of action for counterfeiting. Lanham Act § 1116 requires that a "counterfeit mark" be "a counterfeit of a mark that is <u>registered</u> . . . ." 15 U.S.C. § 1116 (d)(B)(i) (emphasis added); *Island Fund Managemnt, Inc. v. RWS, Inc.*, No. 18-21065-CIV, 2019 WL 1466707, at *4 (S.D. Fla. Feb. 11, 2019) ("[T]o establish counterfeiting, a plaintiff must establish . . . the mark [is a] 'counterfeit,' meaning 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'") (internal citations omitted). Plaintiffs cannot seek treble and statutory damages per the Lanham Act's plain language, and Plaintiffs' claim for treble damages under "Florida law" is insufficient as the FDUTPA does not provide for treble damages. Fla. Stat. § 501.211.

Moreover, the scope of the injunctive relief sought is an overbroad, "obey-the-law" injunction. *See* Compl. Prayer (2)(b), (3) (praying for an injunction against "engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive the public and/or the trade"). "An injunction that would do no more than instruct the defendant to 'obey the law' does not satisfy the specificity requirement of Federal Rule of Civil Procedure 65(d)." *Rosado v. Chattahoochee Valley Cmty. Coll.*, No. 3:14CV33-MHT, 2024 WL 1349021, at *5 (M.D. Ala. Mar. 29, 2024) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)) (cleaned up); *see also Spagnuolo v. Ins. Office of Am., Inc.*, 356 So. 3d 908, 919 (Fla. Dist. Ct. App. 2023) ("An injunction which generally states that those enjoined shall not violate the law or specific statutes is typically considered too vague to stand."). A claim for an overbroad injunction cannot survive a motion to dismiss. *See Rosado*, 2024 WL 1349021, at *5 (dismissing claim for injunction against violating plaintiffs' federal rights).

## II.   Plaintiffs' Claims Against Haggar Remain Improper "Shotgun" Pleadings.

Plaintiffs' claims in the Amended Complaint again constitute an improper "shotgun" pleading. The Court already *sua sponte* dismissed Plaintiffs' claims "for failure to adequately

distinguish the factual allegations between the various Defendants and for asserting multiple counts against them without specifying which Defendants are responsible for which acts giving rise to suit." D.E. 4 at 1-2. Plaintiffs have had decades to consider and bring this case and were given clear notice of their original pleading's deficiencies, yet their lengthy Amended Complaint still conflates the various Defendants and fails to provide the required specificity.

Plaintiffs' Amended Complaint is *longer* than their original complaint, yet Plaintiffs continue to conflate the parties' actions and maintain "shotgun pleading" deficiencies. This Court explained that the original complaint "pose[d] unique challenges for the Defendants to respond to the allegations" of "joint advertising and selling of the products which include the Marks." *Id.* at 2 (citing D.E. 1 ¶ 64). The Amended Complaint copies and pastes former Paragraph 64 into four different paragraphs, which merely add a defendant's name and assign a defined term to each defendant's supposedly infringing products.[3] In *Yahav Enterprises LLC v. Beach Resorts Suites LLC*, the plaintiff's attempt to replead a shotgun pleading in this way was rejected. *See* No. 1:15-CV-22227-KMM, 2016 WL 111361, at *3 (S.D. Fla. Jan. 11, 2016) (collecting cases and noting that "Plaintiff attempts to overcome this failure at distinguishing the liability for each defendant by cutting and pasting in whole each of its alleged counts against each of the three defendants. This is purely a matter of form over substance and does not satisfy federal pleading requirements").

Plaintiffs' efforts to target specific Defendants in Paragraphs 56 through 111 likewise does not cure their pleading. *See* Compl. ¶¶ 56-111. The seven paragraphs generally alleged against

---

[3] *Compare* DE 1 ¶ 64 (". . . Defendants falsely mark, falsely advertise, falsely promote and designate their goods, services, and products (collectively, the 'Infringing Products') . . ."), *with, e.g.*, Compl. ¶ 123 (". . . NFLP and NFL falsely mark, falsely advertise, falsely promote and designate their goods, services, and products (collectively, the 'NFLP and NFL Infringing Products') . . ."). Compl. ¶¶ 131, 139, and 147 even repeat the same errant typo (an extra space following "falsely marks" in the first sentence of each paragraph).

Haggar, *see id*. ¶¶ 105-111, acknowledge that Haggar acted pursuant to authorization Plaintiffs do not dispute and do not state a cause of action. Once again, Paragraphs 1 through 55 are blanket allegations made in each count against each Defendant, and do not explain how Haggar (who is not named or mentioned at all in Paragraphs 3 through 30) has done wrong independently from the other Defendants. Such "indiscriminate[] incorporat[ion]" of allegations is inappropriate. *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021); *see also D.B.C. Corp.,* 464 F. Supp. 3d at 1327 (describing improper incorporation of allegations as the most common feature of shotgun pleadings). These paragraphs do not "specify *who* took *what* action." *See* DE 4 at 2. Paragraphs 35 through 37 broadly allege, for instance, what "Defendants" "offered," "use," and "are aware of," but fail to explain what *Haggar* has done wrong. *See* Compl. ¶¶ 35-37. Counts VIII and XII improperly incorporate prior counts into successive counts against Haggar. *Id*. ¶¶ 169, 192. *See Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential "shotgun" pleading."). Finally, Plaintiffs fail to tie the relief they seek to the counts they plead. *See* Compl. Prayer (2), (3), (8), (9) (praying for, e.g., broad injunctive relief without specifying what claim justifies the relief); *Agostinacchio v. Heidelberg Engg, Inc.,* No. 0:18-CV-60935-UU, 2019 WL 3243408, at *6 (S.D. Fla. Feb. 5, 2019) (dismissing pleading that failed to "specify what relief applies to which claim"). This hallmark of shotgun pleadings bucks the Court's instruction to specify the legal basis for "relief" for "*each count*." *See* D.E. 4 at 3.

### III.    Plaintiffs' Claims Against Haggar Are Untimely.

The Amended Complaint is clear on its face that any allegedly "wrongful conduct" on Haggar's part occurred years – if not *decades* – beyond any legal and equitable temporal limitations period. *See e.g., Gonzalez v. Equifirst Corp.*, No. 09-22207-CIV, 2009 WL 10667756, at *3 (S.D. Fla. Oct. 28, 2009) (dismissing untimely claims for damages with prejudice). Mr.

Maitland left the NFLAA in or about 1988. That was <u>thirty-six years ago</u>, and no claim was made. *See* Compl. ¶ 25 ("Defendants started using their versions of the Marks in or about 1989"). When the marks were allegedly changed in 2011 and 2012 (during Mr. Maitland's lifetime), <u>fourteen years ago</u>, no claim was raised. *See* Compl. ¶ 49. When Mr. Maitland passed away <u>six years ago</u>, no claim was made. *See id*. (Plaintiffs confirm the same works were "used on the 2012 Gold Jackets to the present"). All the while, Haggar openly and properly manufactured Gold Jackets in line with its express authorization to use the related intellectual property under license. This case exceeds the applicable limitations period and must be dismissed.

### A.    Plaintiffs' FDUTPA Claim is Untimely.

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") claims based on statutory liability are subject to a four-year statute of limitations period from the sale of the product at issue.[4] *See* Fla. Stat. § 95.11(3)(e); *Heuer v. Nissan N. Am., Inc.*, No. 17-60018-CIV, 2017 WL 3475063, at *3 (S.D. Fla. Aug. 11, 2017). Where untimeliness is "apparent from the face of the complaint," dismissal is appropriate. *Heuer*, 2017 WL 3475063, at *4 (S.D. Fla. Aug. 11, 2017); *see also Tuuci Worldwide, LLC v. S. Frankford & Sons, Inc.*, No. 23-20615-CIV, 2023 WL 5275187, at *6 (S.D. Fla. Aug. 16, 2023) ("The Court recognizes that a statute-of-limitations defense can be raised by motion to dismiss where the complaint affirmatively shows that the claim is barred") (citation omitted). Plaintiffs do not dispute Haggar's authorization to make Gold Jackets during Mr. Maitland's tenure at the NFLAA, yet they somehow allege that Haggar's identical conduct over the following thirty-six years was improper. *See* Compl. ¶¶ 25, 45, 52. Plaintiffs plead that Mr. Maitland's purported stylization of the Marks was phased out, that a new design was introduced

---

[4] Gold jackets are not available for sale to the public at all and, on that ground, the FDUTPA may have no applicability at all. However, for purposes of this motion for dismissal with prejudice, we treat the availability of gold jackets as sales.

fourteen years ago, in 2011 or 2012, and such design remains in use today. *See* Compl. ¶ 49. Each of these time periods exceeds the FDUTPA's four-year limitation.

**B.      Plaintiffs' Lanham Act Claims are Time-Barred and Prohibited by Laches.**

Plaintiffs' claims are also untimely under the Lanham Act. This is a case of <u>extraordinary</u> undue delay, causing undue and significant legal and economic prejudice to Haggar. Allowing the Estate to allege and demand enforcement of rights that the decedent never claimed over his 98-year lifetime, upending a decades-long business relationship, is inequitable.

"The equitable defense of estoppel by laches may be applied to bar . . . Lanham Act [claims]." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1005 (11th Cir. 2021) (internal citations omitted). A party claiming laches must show "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1276 (M.D. Fla. 2015). "[B]ecause the Lanham Act does not contain a statute of limitations, the period for analogous state law claims is to be used as a touchstone for laches, which in Florida is four years." *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1239 (S.D. Fla. 2021) (internal quotations omitted). Plaintiffs' Lanham Act counts exactly track their FDUTPA claims, and the four-year limitations period should apply to bar Plaintiffs' claims. The principles of laches confirm this bar.

Plaintiffs' lawsuit comes after <u>inexcusable delay</u>. *Pinnacle*, 7 F.4th at 1009 (11th Cir. 2021) ("A trademark owner cannot simply wait without explanation to see how successful the defendant's business will be and then [sue] to take away [the] good will developed by defendant in the interim.") (quoting treatise); *McCants v. Barnhart*, No. 5:19-CV-0633-LSC, 2022 WL 980837, at *6 (N.D. Ala. Mar. 30, 2022) (dismissing complaint where "Plaintiff inexcusably delayed bringing any claims . . . by nearly two decades"). Despite clear awareness of Haggar's

role as the exclusive provider of Gold Jackets in a highly publicized affair since 1978, *e.g.* Compl. ¶¶ 11, 25-26, 34-35, 39, 44, 48, 52-55, 72, 74, 103, 108-110, this lawsuit is the first objection to a business relationship Plaintiffs acknowledge dates back nearly fifty years and was endorsed *by Mr. Maitland*. This is inexcusable delay. *See Spiral Direct*, 151 F. Supp. 3d at 1276 (inexcusable delay pleaded where claimants knew or should have known first use was 22 years prior).

Plaintiffs' and Mr. Maitland's decades-long delay has caused undue prejudice, both evidentiary and economic. *See, e.g., Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 412* (6th Cir. 2002), *cert. denied,* 538 U.S. 907, 123 S. Ct. 1486, 155 L. Ed. 2d 227 (2003) ("Unavailability of important witnesses, dulling of memories of witnesses and loss or destruction of relevant evidence all constitute prejudice."); *Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 1119- 1120 (9th Cir. 2018) ("Expectations-based prejudice exists where a defendant took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly. . . . Evidentiary prejudice exists where a plaintiff's delay has led to lost, stale or degraded evidence, or witnesses whose memories have faded, or who have died.") (internal quotations omitted). Mr. Maitland himself and many others in the Amended Complaint have passed away and cannot testify about the alleged facts, including William J. Ray of the NFL (d. 1986), Pete Rozelle of the NFL (d. 1996), Bill Bidwell of the NFL (d. 2019), and Sylvan Landau at Haggar (d. 2010). *See, e.g.*, Compl. ¶ 106. Critical documents and information referenced, but tellingly not pled, are likely to have been lost or destroyed in the ordinary course of business. *See McCants*, 2022 WL 980837, at *7 (determining undue prejudice existed at the pleading stage where the beneficiary was deceased and key documents lost, forcing the defendant "to rely on an incomplete record"). Economically, Haggar's well-founded reliance on its contracts and relationships with third parties has driven decades of action: hiring, development, manufacture,

promotion, and economic investment. *See Spiral Direct*, 151 F. Supp. 3d at 1276 (finding economic prejudice pleaded where purported infringers "enjoyed uninterrupted use" over 22 years and relied on "their ability to [do so] without interference from [the claimant]"). On these pleaded facts, the Court can dismiss Plaintiffs' Lanham Act claims as barred by laches.

### C. Plaintiffs Fail to Plausibly Plead Facts Sufficient to Toll the Statute of Limitations or Rebut Laches.

Where a complaint is evidently time-barred, the burden rests on an otherwise untimely claim's proponent to plead facts sufficient to toll the statute of limitations. *Patel v. Diplomat*, 605 Fed. Appx. 965, 966 (11th Cir. 2015) (finding that, where the dates included in the complaint made the time-bar apparent, plaintiff failed to plausibly allege tolling of the statute of limitations). Plaintiffs offer two theories for pursuing their extraordinarily untimely claims: first, that misappropriation is ongoing because each Hall of Fame Enshrinement constitutes a new misappropriation, Compl. ¶ 1, and second, that Mr. Maitland's death in 2019 and/or purported prior mental incapacity tolls the limitations period. *Id*. ¶ 46.[5] Neither theory succeeds.

Plaintiffs acknowledge that the design of the current Gold Jacket, including logos used thereon, has not changed since at least as early as 2012, and Plaintiffs offer no facts beyond his age to show that Mr. Maitland lacked mental capacity. Even assuming *arguendo* that Plaintiffs' claims somehow accrued after Mr. Maitland's death, Plaintiffs contend that the rights to Mr. Maitland's purported intellectual property passed to the Estate at the time of his death in 2019. *See e.g.*, Compl. ¶ 11 ("Marks are Vic's proprietary and intellectual property which passed to the Estate

---

[5] Plaintiffs also allege that "Defendants went through great length in concealing their misappropriations of Vic's creations." Compl. ¶ 47. This allegation is not targeted at Haggar, except in connection with "widely televised HOF Enshrinement and weeklong festivities, events and awards dinners, including the induction of the new class of HOF members, and presentation of the Gold Jackets supplied by Haggar." *Id*. ¶ 55. Haggar's role in a "widely televised" affair is hardly "conceal[ed]." *See id*. ¶¶ 47, 55.

when he passed away in 2019."). Yet, despite Hall of Fame enshrinements continuing to occur annually, Plaintiffs waited until November 2023, more than four years from passage of any intellectual property to the Estate, to even begin *investigating* the matter. *See e.g.*, Compl. ¶ 47 ("Jamie, Kathy and Jack also made numerous phone calls to Defendants in late 2023"). Plaintiffs then waited *two more years* and did not file suit until August 2025. Plaintiffs offer no reason for their delay or for bringing these untimely claims now, adding their own untimeliness and laches to those occurring during Mr. Maitland's lifetime.

## IV.    Plaintiffs' Claims Against Haggar Should Be Dismissed with Prejudice.

Where a plaintiff has "been given an opportunity to correct his pleadings, the judge [is] not required to give him another chance." *Cornelius v. Bank of Am., NA*, 585 Fed. Appx. 996, 1000 (11th Cir. 2014) (affirming dismissal of repleaded complaint with prejudice). *Repleading* a shotgun pleading merits dismissal with prejudice. *See Rivas v. Taylor Made Lending LLC*, No. 25-80260-CV, 2025 WL 1095069, at *2 (S.D. Fla. Apr. 9, 2025) (Middlebrooks, J.) (dismissing shotgun pleading with prejudice following *sua sponte* dismissal and amendment). "A court may also dismiss a case with prejudice when amendment would be futile" and "when further amendment would unduly prejudice a defendant." *Chiron Recovery Ctr., LLC v. United Healthcare Services, Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020) (citation omitted). The Amended Complaint is untimely and barred by laches, retains its "shotgun pleading" deficiencies, and fails to state a claim against Haggar. It should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Haggar respectfully requests that the Court dismiss Plaintiffs' Amended Complaint against Haggar with prejudice.

*[signature on following page]*

Date:   October 14, 2025                   Respectfully submitted,

**LOTT & FISCHER, PL**

**/s/ Noah H. Rashkind**
Leslie J. Lott
Florida Bar No. 182196
E-mail: ljlott@lottfischer.com
Noah H. Rashkind
Florida Bar No. 21945
E-mail: nrashkind@lottfischer.com
Ariel Weltz
Florida Bar No. 1033815
E-mail: aweltz@lottfischer.com
255 Aragon Avenue, Third Floor
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191

And

**BAKER BOTTS L.L.P.**
*Julie Beth Albert, Esq.
E-mail: julie.albert@bakerbotts.com
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500

*Admitted Pro Hac Vice*

**Attorneys for Defendant Haggar Clothing Co.**