## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KATHERINE M. LASSEN and JAMES V. MAITLAND, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF VICTOR I. MAITLAND, <br><br>      Plaintiffs, <br><br> v. <br><br> NFL PROPERTIES LLC, NATIONAL FOOTBALL LEAGUE; NATIONAL FOOTBALL LEAGUE ALUMNI, INC.; NATIONAL FOOTALL MUSEUM INC. d/b/a PRO FOOTBALL HALL OF FAME; and HAGGAR CLOTHING CO., <br><br>      Defendants. | Civil Action No.: <br> 9:25-CV-80981-DMM |

**<u>DEFENDANT NATIONAL FOOTBALL MUSEUM INC. d/b/a PRO FOOTBALL HALL OF FAME'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

I.    **SUMMARY OF THE ARGUMENT**……………………………………………………1

II.   **STATEMENT OF FACTS**………………………………………………………2

III.  **ARGUMENT**………………………………………………………..…………......3

       A.  LEGAL STANDARD………………………………………………………3

       B.  PLAINTIFF'S LANHAM ACT CLAIMS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED BECAUSE THEIR DECADES-LONG DELAY IN BRINGING THIS ACTION INCURABLY ATTACHED THE LACHES DEFENSE………………………………..4

           1.  PLAINTIFFS' DELAYED ASSERTING THEIR LANHAM ACT CLAIMS……………………………………………………....5

           2.  PLAINTIFFS' DELAY IN ASSERTING THEIR LANHAM ACT CLAIMS IS NOT EXCUSABLE………………………………………………....8

           3.  THE HALL OF FAME HAS BEEN UNDULY PREJUDICED BY PLAINTIFFS' DELAY IN BRINGING THEIR LANHAM ACT CLAIM……………………………………………………9

       C.  PLAINTIFFS HAVE NO OWNERSHIP INTEREST IN THE MARKS BECAUSE NEITHER MAITLAND NOR THEY EVER USED THEM IN COMMERCE…………………………………………...…………..11

       D.  EVEN IF PLAINTIFFS HAVE AN OWNERSHIP INTEREST IN THE MARKS, PLAINTIFF STILL HAVE NO VIABLE CLAIMS BECAUSE MAITLAND FAILED TO USE AND, THEREFORE ABANDONED THE MARKS………………………………………………………13

       E.  THE LANHAM ACT CLAIMS CANNOT STAND BECAUSE PLAINTIFFS FAIL TO ALLEGE LIKELIHOOD OF CONFUSION…………………………………………………………15

       F.  IF THE COURT WERE TO DISPOSE OF THE LANHAM ACT CLAIMS, THE STATE LAW CLAIMS MUST ALSO BE DISMISSED………………………………………...…………..16

       G.  PLAINTIFF'S AMENDED COMPLAINT IS STILL A SHOTGUN PLEADINGS THAT MUST BE DISMISSED WITH PREJUDICE……………………………………………………...17

IV.  **CONCLUSION**………………………………………………………...19

## <u>TABLE OF AUTHORITIES</u>

**Case Law** ............................................................................................................................. **Page**

*Alfa Corp v. Alpha Warranty Servs., Inc*., 696 F. Supp. 3d 1086, 1105 (M.D. Ala 2023)…………………………………………………………..……………..…5

*AmBrit, Inc. v. Kraft Inc*., 812 F.2d 1531, 1546 (11th Cir. 1986)…………………………5

*2Ameristar Air Cargo, Inc. v. Triad Aero Sales Corp*., 2023 WL9522235*1 (S.D. Fla November 7, 2023)  …………..……………………………………………………….3

*Am Tech. Ventures, LLC v. Orlov*, 20-23728-CIV, 2021 WL 4973536, at *3 (S.D. Fla. June 9, 2021)…………………………………………………………….………………11

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc*., 522 F.3d 1200, 1207 (11th Cir. 2008)……………………………………………………………………………….......8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  …………………………………..…3

*Britt v. Durham*, 770 F. Supp. 3d 1390, 1397 (N.D. Ga. 2025). …………………….……4

*Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F. 3d 1364, 1368 (11th Cir. 1997)…………………………………………………………………………………….3

*Chanel, Inc. v. Iphonecasehub.com*, 25-61241-CIV, 2025 WL 2779875, at *4 (S.D. Fla. Sept. 30, 2025)………………………………………………………..……..16

*CM Entertainment, Inc. v. Diaz World Trade Group, Inc*., 22-23189-CV, 2024 WL 3360450 at *18 (S.D. Fla May 22, 2024)…………………………………..……………5

*Coffey v. Southstar Development Co*., 2:25-CV-812-JES-NPM, 2025 WL 2896965, at *1 (M.D. Fla Oct. 10, 2025)…………………………………………..……………16

*Duro Beam, LLC v. Manning*, 24-CV-81550-WPD/BER, 2025 WL 2416143, at *2 (S.D. Fla. Aug. 21, 2025)…………………………………………………………………17

*Goldberg v. Cuzcatlan Bevs*., Inc., 260 B.R. 48, 53 (Bankr. S.D. Fla. 2001)………...……11

*Grocery Outlet Inc. v. Albertson's Inc*., 497 F.3d 949, 951 (9th Cir. 2007)…………..….....12

*Hydentra HLP Int. Ltd. v. Luchian*, 1:15-CV-221134-UU, 2016 WL 5951808, at *7 (S.D. Fla. June 2, 2016)………………………………………………………..……15

*Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp*., 18-20927-CIV, 2019 WL 3890345, at *4 (S.D. Fla. June 25, 2019)………………………………………………9

*IP-6 International Inc. v. Nutrigold, Inc*., 6:21-CV-1507-CEM-DCI, 2023 WL 9958386, at *2 (M.D. Fla Mar. 31, 2023)……………………………………...………4, 5, 6, 8

*Island IP Acquisitions, LLC v. Spencer Antle, Island Co. LLC*, 22-CV-81293, 2024 WL 4029812, at *3 (S.D. Fla August 19, 2024)…………………………………….…....13

*John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 972 (11th Cir. 1983)………...14

*Kason Indus, Inc. v. Component Hardware Grp, Inc*., 120 F.3d 1199, 1203 (11th Cir. 1997)……………………………………………………………………...……4, 8

*Kim XI legacy Enter. LLC v. Richardson*, 2:24-CV-1053-SPC-KCD, 2025 WL 1261158, at *1 (M.D. Fla May 1, 2025)……………………………………………..……….....4

*Leader Entertainment S.A. v. Crom Prods., LLC*, 24-CV-22839, 2025 WL 2586135, at *5 (S.D. Fla Sept.8,2025)……………………………………….......................15

*Louis Vuitton Malletier v. 14497614*, 24-22652-CIV, 2025 WL 2720236, at *4 (S.D. Fla September 30, 2025)……………………………………………...………....16

*Masse v. MSC Cruises*, S.A. 24-CV-61121, 2025 WL 2896177, at *5 (S.D. Fla. Oct. 10, 2025)……………………………………………………………...………16

*MC3 Investments LLC v. Local Brand, Inc*., 661 F. Supp 3d 1145, 1160 (N.D. Fla. 2023)…………………………………………………………………...………15

*Method Pharm., LLC v. H2-Pharma, LLC*, 2:20-CV-753-ECM, 2024 WL 1837351, at *6 (M.D. Ala Apr. 26, 2024)…………………………………………………………5

*Morgan Glob., PLLC v. Croskey Law, PLLC*, 3:25-CV-491-MMH-MCR, 2025 WL 1580799, at *1 (M.D. Fla June 4, 2025)…………………………………………..17

*Nakava LLC v. S. Pac. Elixir Co*., 22-13567, 2023 WL 4364502, at 3*(11th Cir. July 6, 2023)……………………………………………………………..……....13

*Nat. Answers, Inc. v. SmithKline Beecham Corp*., 529 F.3d 1325, 1329 (11th Cir. 2008)……………………………………………………………….……13

*Nutradose Labs, LLC v. Bio Dose Pharma*, 22-CV-20780, 2023 WL 3645405, at *20 (S.D. Fla May 25, 2023)……………………………………………………………4

*On Clouds GmbH v. oncloudsshoesforall.com*, 24-23061-CIV, 2025 WL 2714462, at *3 (S.D. Fla. Sept. 15, 2025)…………………………………………...............14

*Pinnacle Advert. & Mktg. Group, Inc. v. Pinnacle Advert. & Mktg. Group, LLC*, 7 F. 4th 989, 1009 (11th Cir. 2021)……………………………………………………...…….…8, 9

*Restivo v. Pennachio*, 21-23388-CIV, 2022 WL 4355764, at *6 (S.D. Fla September 20, 2022)……………………………………………………………….…………...5

*Rolex Watch U.S.A., Inc. v. Jewelry Unlimited, Inc*., 757 F. Supp. 3d 1342, 1366 (N.D. Ga 2024)……………………………………………………………...……….....5

*Sandshaker Lounge & Package Store, LLC v. Quietwater Entertainment, Inc*., 3:13CV114/MCR/CJK, 2016 WL 3566835, at *2 (N.D. Fla. Feb 24, 2016)……………..13

*Savannah College of Arts & Design, Inc. v. Sportswear, Inc*., 872 F.3d 1256, 1266 (11th Cir. 2017)………………………………………………………………..……….10

*S. Grouts & Mortars, Inc. v. 3M Co*., 07-61388-CIV, 2008 WL 4346798, at *3 (S.D. Fla Sept. 17, 2008)………………………………………………………………...……...…..6

*Shottland v. Harrison*, 11-20140-CIV, 2012 WL 2814350, at *6 (S.D. Fla July 10, 2012)……………………………………………………………...………………9

*Sprint Communications, Inc. v. Calabrese*, 18-60788-CIV, 2018 WL 11227736, at *5 (S.D. Fla Dec. 20, 2018)………………………………………………………...……...13

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc*., 151 F. Supp. 3d 1268, 1276 (M.D. Fla 2015)…………………………………………………………………...…...13

*Taverna Imports, Inc. v. A&M Wine & Spirits, Inc*., 15-24198-CIV, 2018 WL 11227736, at *5 (S.D. Fla. Dec 20, 2018)…………………………………………………....12

*United Drug Company v. Theodore Rectanus Co*., 248 U.S. 90, 97 (1918)………………11

*Vampire Family Brands, LLC v. Dracula's Legacy, LLC*, 8:23-CV-1014-TPB-TGW, 2025 WL 2780338, at *2 (M.D. Fla. Sept. 30, 2025)…………………………………...14

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313. 1324 (11th Cir. 2015)……………………………………………………………………………..……17

**Statutes**………………………………………………………………………………..

1. 15 U.S.C. § 1115(b)(2)…………………………………………………….…...12
2. Florida Statue § 95.11(3)……………………………………………………...5
3. Florida Statue § 501.201…………………………………………………..……16
4. Fed. R. Civ. P. 12 …………………………….................................................1, 3

iv

**COMES NOW**, Defendant NATIONAL FOOTBALL MUSEUM, INC. d/b/a PRO FOOTBALL HALL OF FAME (hereinafter "Hall of Fame"), by and through the undersigned counsel, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby files this Motion to Dismiss Plaintiffs' Amended Complaint, filed on August 22, 2025 and in support states as follows:

## I.     <u>SUMMARY OF THE ARGUMENT</u>

This matter is a significantly and prejudicially delayed trademark infringement action – filed *decades* beyond the permissible filing period – that involves marks that Plaintiff-Decedent Victor Maitland ("Maitland") allegedly created.  Supposedly, Maitland did so when he was working for the NFL Alum.  This action is, at best, specious and, at bottom, an attempted money grab.  This lawsuit should have been filed **<u>32 years ago</u>** at the latest – deeper into the laches period than ever permitted by any court.  This filing delay subjects this trademark infringement action dispositively to the laches defense.  Plaintiffs' own factual allegations expose the fact that they have no excuse for not filing earlier.

Even if this action could somehow be deemed to have been timely brought, and even if Maitland could possibly have been a trademark owner of the subject NFL Alumni logo and gold jacket marks (collectively, the "Marks"), Plaintiffs still have no standing to assert their federal trademark claims against the Hall of Fame because Maitland abandoned the Marks long ago.  There is a prima facie presumption of abandonment if a trademark owner does not use its marks for three years.  Plaintiffs openly admit that Maitland and they have not used the Marks since at least 1988 – 37 years ago – and have *never* used them for commercial purposes, instead contending that only Defendants have used them exclusively for nearly the past four decades.

1

## II.   <u>STATEMENT OF FACTS</u>

The genesis of this action apparently arose approximately 48 years ago when Maitland first became affiliated with Defendant NFL Alumni.  What follows is the lengthy timeline of the history of the Marks, according to Plaintiffs:

1.      Beginning in 1977, Defendant NFL Alum employed Maitland. (D.E. 8, ¶¶ 7–8).

2.      During Maitland's time with the NFL Alum, Maitland allegedly created and worked on a design for the Marks used by the NFL Alum. (D.E. 8, ¶¶ 10, 13–17, 51).

3.      In 1977, Maitland created and worked on a design of a prototype design of the Gold Jacket and the NFL Alum launched it into commerce. (D.E. 8, ¶¶ 1, 19, 51).

4.      In 1978, Maitland negotiated a contract with Haggar for the NFL Alum to supply Gold Jackets to new Hall of Fame inductees. (D.E. 8, ¶¶ 33).

5.      The Gold Jacket was used by the NFL, NFL Alum, and the Hall of Fame. (D.E. 8 ¶ 44).

6.      In 1988, Maitland stepped down from his position with the NFL Alum. (D.E. 8, ¶¶ 44–45, 51).

7.      Maitland did not register any trademarks or copyrights for the Marks. (D.E. 8, ¶ 38).

8.      From 1989 through today, the Defendants have used and continue to use variations of the Marks. (D.E. 8, ¶ 39, 48).

9.      Plaintiffs allege that the Defendants misappropriated the Marks from 1989 to 2010 by using the same emblem/shield design as the 1989 Gold Jackets for their HOF induction ceremonies. (D.E. 8, ¶ 48).

10.     Maitland and/or Plaintiffs have not used the Marks since at least 1988. (D.E. 8, ¶ 22).

11.     Beginning in 1989, Maitland knew the Defendants were using the Marks through their public display of the Marks. (D.E. 8, ¶¶ 25–26).

12.     Maitland passed away on November 29, 2019.  (D.E. 8, ¶ 46).

13.     On July 15, 2025, Plaintiffs submitted a copyright application, which is still pending. (D.E. 8, ¶ 38).

### III.  <u>ARGUMENT</u>

### A.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ameristar Air Cargo, Inc. v. Triad Aero Sales, Corp.* 2023 WL9522235 *1 (S.D. Fla. November 7, 2023), *citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Am. Dental Ass'n v. Cigna Corp.,* 605 F. 3d 1283, 1290 (11th Cir. 2010). In evaluating the Complaint under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations of fact. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft,* at 679. "[B]are assertions" that "amount to nothing more than a `formulaic recitation of the elements' of a claim `are conclusory and not entitled to be assumed true.'" *Id.,* at 680. In reviewing a motion filed under Rule 12(b)(6), the court must limit its consideration to the complaint and its attachments. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F .3d 1364, 1368 (11th Cir. 1997).

**B. PLAINTIFFS' LANHAM ACT CLAIMS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED BECAUSE THEIR DECADES-LONG DELAY IN BRINGING THIS ACTION INCURABLY ATTACHES THE LACHES DEFENSE**

Laches is an equitable time limitation on a party's right to bring suit. *Nutradose Labs, LLC v. Bio Dose Pharma*, 22-CV-20780, 2023 WL 3645405, at *20 (S.D. Fla. May 25, 2023), citing *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) ("The defense of estoppel by laches is an equitable defense that may be applied to bar claims for trademark infringement under the Lanham Act."); *IP-6 Int'l, Inc. v. Nutrigold, Inc.*, 6:21-CV-1507-CEM-DCI, 2023 WL 9958386, at *2 (M.D. Fla. Mar. 31, 2023) ("The equitable defense of estoppel by laches may be applied to bar Lanham Act claims.").

To assert a laches defense, "a defendant must demonstrate '(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.'" *Kim XI Legacy Enter. LLC v. Richardson*, 2:24-CV-1053-SPC-KCD, 2025 WL 1261158, at *1 (M.D. Fla. May 1, 2025).

The Court is fully within its authority to dismiss this action at the pleading stage if it finds that the laches defense applies: "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense… if it appears beyond a doubt that plaintiffs can prove no set of facts that toll the statute." *Britt v. Durham*, 770 F. Supp. 3d 1390, 1397 (N.D. Ga. 2025).

For the following reasons, all three elements of the laches defense are met, by Plaintiffs' own admission, warranting dismissal.

### 1. PLAINTIFFS DELAYED ASSERTING THEIR LANHAM ACT CLAIMS

"[T]he Eleventh Circuit [has] applied the doctrine of laches to Lanham Act claims and held that the statute of limitations period for analogous state law claims serves 'as the touchstone for

4

laches.'" *Method Pharm., LLC v. H2-Pharma, LLC*, 2:20-CV-753-ECM, 2024 WL 1837351, at *6 (M.D. Ala. Apr. 26, 2024); *Restivo v. Pennachio*, 21-23388-CIV, 2022 WL 4355764, at *6 (S.D. Fla. Sept. 20, 2022) ("[T]his Circuit 'applies the period for analogous state law claims as the touchstone for laches.'").

"There is no statute of limitations for Lanham Act claims, but the limitations period for trademark claims in Florida is four years, which is used as a touchstone to demonstrate laches." *AmBrit, Inc. v. Kraft Inc.,* 812 F.2d 1531, 1546 (11th Cir. 1986). "In Florida, the 'touchstone' to be used [in a Lanham Act laches analysis] is Florida Statute section 95.11(3), providing a limitation period of four years. Thus, a presumption of laches arises if the plaintiff files suit more than four years from the time she discovered or should have discovered an alleged trademark infringement." *IP-6 Int'l, Inc, supra*, at *3; *CM Entm't, Inc. v. Diaz World Trade Grp., Inc.*, 22-23189-CV, 2024 WL 3360450, at *18 (S.D. Fla. May 22, 2024) ("The analogous Florida limitations period for this type of action is four years.").

The courts of the Eleventh Circuit are in agreement. *See*, e.g., *Rolex Watch U.S.A., Inc. v. Jewelry Unlimited, Inc.*, 757 F. Supp. 3d 1342, 1366 (N.D. Ga. 2024) ("[T]he Eleventh Circuit has borrowed from the closest analogous state law and held that the four-year period applicable to similar causes of action under Georgia's Uniform Deceptive Trade Practices Act ... governs the inquiry in Lanham Act cases."); *Alfa Corp. v. Alpha Warranty Servs., Inc.*, 696 F. Supp. 3d 1086, 1105 (M.D. Ala. 2023) ("The 'touchstone for laches' is found by looking at the limitations period for analogous state-law claims.").

"Delay is 'measured from the time at which the plaintiff knows or should know [it] has a provable claim for infringement.'" *Method Pharm., LLC v. H2-Pharma, LLC*, 2:20-CV-753-ECM, 2024 WL 1837351, at *7 (M.D. Ala. Apr. 26, 2024); *IP-6 Int'l, Inc.*, *supra*, at *3 ("[T]o

determine if a plaintiff delayed in enforcing its trademark rights, courts start the calculation 'from the time at which the plaintiff knows or should know she has a provable claim for infringement.'").

When applicable, a plaintiff's notice clock begins to run when the defendant allegedly begins infringing "openly and overtly." *IP-6 Int'l, Inc.*, *supra*, at *4.

"[I]f the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." *S. Grouts & Mortars, Inc. v. 3M Co.*, 07-61388-CIV, 2008 WL 4346798, at *3 (S.D. Fla. Sept. 17, 2008).

Plaintiffs' own facts show that they knew or should have known since at least 1989 that Defendants were allegedly engaged in the unauthorized use of the Marks.  In 1977, Maitland allegedly created and/or designed the Marks and the NFL Alum used the logo mark in December 1977. (D.E. 8, ¶ 1, 15, 51).  Maitland ceased using the Marks in 1988.  (D.E. 8, ¶¶ 22, 51) ("[T]he Marks [were] … used by [Maitland] in commerce from 1978 through 1988.").  Maitland (and, subsequently, Plaintiffs) knew the Defendants were using the Marks the following year (1989) through their public display of the Marks. (D.E. 8, ¶ 25) ("Defendants started using their versions of the Marks in or about 1989 . . .").  Plaintiffs then allege that they knew Defendants were using the Marks for the next 21 years. (D.E. 8, ¶ 48) ("Defendants have continued to misappropriate the Marks by using the same emblem/shield design of the 1989 Gold Jackets for their HOF induction ceremonies from 1989 to 2010.").  To pile on the years, Plaintiffs then allege that they have known about Defendants' publicly visible use of the Marks from 2012 to the present.  (D.E. 8, ¶ 49) ("…Defendants have collaboratively used the 2012 Gold Jackets in HOF inductions, goods and services from 2012 to the present.").  Plaintiffs admit that "[c]ommencing in 1989," Defendants' use of the Marks has been "patently obvious."  (D.E. 8, ¶ 52).  Thus, Plaintiffs knew or should have known for at least the past 36 years that Defendants were using the Marks and that they could

have asserted claims (however unmeritorious) as early as 1989 and certainly before 1993 – after which laches attached.  Plaintiffs' impermissible delay thus extends *32 years* beyond Florida's analogous limitations period.

If there was any doubt as to whether Defendants' use of the Marks was open and overt, i.e., whether Plaintiffs knew or should have known of the use, Plaintiffs answer the question.  They allege that Defendants used the Marks in highly public and visible manners, "beginning with the 1989 incoming class of HOF inductees, the first HOF Enshrinement year after Maitland departed from the NFL Alum . . . collaborated presentation of the Gold Jackets through the present day during HOF Enshrinement, HOF week events, dinners and ceremonies leading up to, including, and after the HOF induction ceremonies . . . Defendants also misappropriated the Marks in branding, advertising, and marketing by using its mimicked versions of the Gold Jacket Marks, beginning in 1989 and through the present . . ."  (D.E. 8, ¶ 39).  And Defendants' alleged misappropriation, according to Plaintiffs, has been vastly widespread: "Defendants offer . . . their services, goods, and products to millions of NFL fans throughout the State of Florida, the United States, and even abroad."  (D.E. 8, ¶ 35).

And if there was any doubt as to the length of time of being aware of their claims, Plaintiffs resolved it by doing the math for everyone: "[T]he Marks… were instrumental and continuously misappropriated by Defendants in their mimicked and copied versions for commercial exploitation since 1989, some thirty-six years."  (D.E. 8, ¶ 22).

2.  PLAINTIFFS' DELAY IN ASSERTING THEIR LANHAM ACT CLAIMS
    IS NOT EXCUSABLE

The second element of excuse for delay exists to prevent Lanham Act plaintiffs from squatting on their claims for no good reason and to protect defendants from unwarranted injury:

> In determining whether the second element of laches is met, courts consider whether the plaintiff had an adequate excuse for waiting to bring suit. The excuse requirement ensures that "[a] trademark owner cannot simply wait without explanation to see how successful the defendant's business will be and then [sue] to take away [the] good will developed by defendant in the interim."

*Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1009 (11th Cir. 2021).

Excusable delay only exists in limited circumstances. For instance, "[the Eleventh Circuit has] determined that a delay is 'excusable' where an alleged infringer at first 'sold different products in a different market through different distribution channels later coming in direct competition with the plaintiff." *Kason Indus., Inc.*, *supra*, at 1206. "An excusable delay is often found when the parties are "in constant communication, in an attempt to ascertain whether a peaceful co-existence [is] possible." *IP-6 Int'l, Inc.*, *supra*, at *4 (cleaned up). Additionally, "[c]ourts excuse delay when, for example, a trademark owner delays in suing because it is attempting to resolve the dispute through settlement negotiations." *Pinnacle Advert. & Mktg. Grp., Inc.*, *supra*, at 1009.

None of the aforementioned excuses is pertinent to the instant case. Plaintiffs and Defendants were not selling different products in different markets. The notion of such progressive encroachment is factually impossible in light of the allegation of the Amended Complaint that Plaintiffs have not used the Marks since at least 1988. (D.E. 8, ¶ 22, *supra*). Plaintiffs also do not and cannot allege that they were delayed due to any negotiation of a co-existence or settlement agreement.

One related factor that the Eleventh Circuit courts consider is "the opportunity for the claimant to have acted sooner." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008). Given the lack of any excuse whatsoever to have brought this action

during the four-year limitations period, Plaintiffs offer no excuse as to why they did not bring this suit sooner. Plaintiffs, at all relevant times, were fully aware of the alleged infringement of the Marks because, by their own factual admission, the Defendants have *every year* openly and overtly used the Marks, from annual golf tournaments to the well-known Hall of Fame induction ceremony to television shows. (D.E. 8, ¶¶ 1, 21). Plaintiffs were not ignorant of Defendants' use. There was nothing preventing or deterring Plaintiffs from acting sooner.

      3.   <u>THE HALL OF FAME HAS BEEN UNDULY PREJUDICED BY PLAINTIFFS' DELAY IN BRINGING THEIR LANHAM ACT CLAIMS</u>

"Courts have previously recognized two categories of prejudice caused by a delay in bringing a trademark infringement suit—evidentiary prejudice and economic prejudice." *Pinnacle Advert. & Mktg. Grp., Inc.*, *supra*, at 1010.

"Evidentiary prejudice can arise as a result of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*, 18-20927-CIV, 2019 WL 3890345, at *4 (S.D. Fla. June 25, 2019).

"In contrast, economic prejudice 'arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice.'" *Ideal Image Dev. Corp.*, *supra*, at *4. Such prejudice can also occur "where delay precluded defendant's ability to 'effectively adopt an alternative marketing position.'" *Shottland v. Harrison*, 11-20140-CIV, 2012 WL 2814350, at *6 (S.D. Fla. July 10, 2012).

First, evidentiary prejudice exists.  Notably, perhaps the most critical witness to the events related to the Marks, Maitland, passed away six years ago, in 2019.  He is not available to authenticate any of the evidence Plaintiffs present or testify to any of the facts for which he had personal knowledge.  Additionally, Plaintiffs have described events and communications that occurred as far back as nearly *50 years ago*, in 1977, and key events that occurred nearly *40 years ago*.  Witnesses' memories from a half-century ago are not likely to be reliable.

Second, the Hall of Fame is economically prejudiced by Plaintiffs' significant delay in bringing this action.  As Plaintiffs themselves admit: Each Defendant's "branding, advertising, and marketing" has resulted profit from "goods, services and broadcasts of these HOF related events on television, the internet, and social media."  (D.E. 8, ¶ 39).  Plaintiffs apparently recognize the amount of investment, continued commercial use and economic promotion that the Defendants have put into the Marks that would have resulted in such substantial revenue returns, which makes sense after almost 40 years of continuous and overt use. (D.E. 8, ¶¶ 1, 22, 25).  Simply put, the Hall of Fame has invested enormous resources tying the Marks to its identity; yet now, after waiting nearly four decades, Plaintiffs seek to compel the Hall of Fame to abandon its use of the Marks, forcing it to adopt a materially different characterization of its product.  If Maitland or his estate had filed sooner, the Hall of Fame could have invested its resources in shaping an alternative identity in the minds of the public.  As such, the Hall of Fame would suffer evidentiary prejudice and economic prejudice if Plaintiffs' suit were permitted to continue.

## C. PLAINTIFFS HAVE NO OWNERSHIP INTEREST IN THE MARKS BECAUSE NEITHER MAITLAND NOR THEY EVER USED THEM IN COMMERCE

"[I]t is well-settled that trademark (and service mark) rights are derived through use." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1266 (11th Cir. 2017).

As the U.S. Supreme Court proclaimed, if there is no business or commercial use, there is no trademark right:

> There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).

More succinctly stated, "[t]rademark ownership is always appurtenant to commercial activity. Thus, actual and continuous use [in commerce] is required to acquire and retain a protectable interest in a mark." *Am. Tech. Ventures, LLC v. Orlov*, 20-23728-CIV, 2021 WL 4973536, at *3 (S.D. Fla. June 9, 2021); *Goldberg v. Cuzcatlan Bevs., Inc*., 260 B.R. 48, 53 (Bankr. S.D. Fla. 2001) ("Ownership of a trademark depends upon usage, not creation.").

In this case, Plaintiffs have no property interest in the Marks because they have never used them appurtenant to any business or product of their own.  Plaintiffs admit that Maitland's use was only on behalf of the Defendants, not for his own business: "This was the origin of Vic's vision to create 'the gold standard', a 'Gold Jacket' symbolizing prestige, honor, and the lasting distinction of success *within the NFL, the NFL Alum and the HOF*."  (D.E. 8, ¶ 40).  Plaintiffs also admit that Maitland worked for the NFL Alum at all times.  (D.E. 8, ¶ 12 ("Vic accepted the appointment to act as an advisor as the CEO and Executive Director of the NFL Alum.")).  In fact, the Amended Complaint fully discloses that at *all* relevant times -- from at least 1979 through the present – all uses of the Marks were exclusively by and for the Defendants.  (D.E. 8, ¶ 44 ("Vic's 1979 Gold Jacket was used by the NFL, NFL Alum and the HOF for HOF induction ceremonies from 1979 to 1988.");  ¶ 48 (Defendants used "the Marks in their collaborative presentations of the Gold

11

Jackets used for 1989 HOF induction and related services and goods."); ¶ 49 ("The Defendants have collaboratively used the 2012 Gold Jackets in HOF inductions, goods and services from 2011 to the present.")).

Plaintiffs additionally admit that the Marks were used in connection with events hosted or presented by the NFL Alum (The Order of The Leather Helmet; NFL Alumni Charity Golf Tour; NFL Alumni Play of the Year Awards Dinner; and NFL Honors Show). (D.E. 8, ¶¶ 20-21). Further, it is alleged that the NFL Alum presents the Gold Jacket to each year's class of inductees to the Hall of Fame. (D.E. 8, ¶ 21). Finally, in Plaintiffs' reference of the NFL Alum's Summer of 1977 *Time Out!* Magazine, the periodical states that then-NFL Commissioner Pete Rozelle "came to our rescue and gave us permission to use the famous NFL shield with the word 'ALUMNI' across it…" (D.E. 8, ¶ 18). It is undisputed that Maitland was employed by the NFL Alum at this time; thus, the NFL granted permission to the NFL Alum, not Maitland personally, to use the NFL shield with the word "ALUMNI" across. Nowhere in the Amended Complaint are Plaintiffs able to assert any evidence that Maitland personally used and/or owned the trademark rights to the Marks.

### D. EVEN IF PLAINTIFFS HAVE AN OWNERSHIP INTEREST IN THE MARKS, PLAINTIFFS STILL HAVE NO VIABLE CLAIMS BECAUSE MAITLAND FAILED TO USE AND, THEREFORE, ABANDONED THE MARKS

"Abandonment is a defense to a claim of infringement of a registered trademark." *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007), citing 15 U.S.C. § 1115(b)(2). "[R]ights in a mark can be lost through abandonment, non-use, or a naked license without control over product quality." *Taverna Imports, Inc. v. A&M Wine & Spirits, Inc.*, 15-24198-CIV, 2018 WL 11227736, at *5 (S.D. Fla. Dec. 20, 2018).

"[A] defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff." *Sprint Commc'ns, Inc. v. Calabrese*, 18-60788-CIV, 2021 WL 9859768, at *4 (S.D. Fla. Oct. 14, 2021).

"To bring a trademark infringement claim under the Lanham Act, a plaintiff must hold a valid trademark. Under the Lanham Act, a trademark is deemed abandoned, and thus no longer valid, '[w]hen its use has been discontinued with intent not to resume such use.'" *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008).

"'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade and not made merely to reserve a right in a mark." *Island IP Acquisitions, LLC v. Spencer Antle, Island Co. LLC*, 22-CV-81293, 2024 WL 4029812, at *3 (S.D. Fla. Aug. 19, 2024).

"Nonuse for three consecutive years is *prima facie* evidence of abandonment, which creates a rebuttable presumption of an intent not to resume use." *Nakava LLC v. S. Pac. Elixir Co.*, 22-13567, 2023 WL 4364502, at *3 (11th Cir. July 6, 2023); *Island IP Acquisitions, LLC v. Spencer Antle, Island Co. LLC*, 22-CV-81293, 2024 WL 4029812, at *3 (S.D. Fla. Aug. 19, 2024); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1276 (M.D. Fla. 2015) ("There is prima facie evidence that the trademark is abandoned where a trademark is unused for three years.").

Moreover, a trademark owner's "failure to enforce its rights kill[s] its trademark." *Sandshaker Lounge & Package Store, LLC v. Quietwater Entm't, Inc.*, 3:13CV114/MCR/CJK, 2016 WL 3566835, at *2 (N.D. Fla. Feb. 24, 2016).

The facts alleged in the Complaint are clear that Plaintiffs made no attempt or effort to use the marks "in the ordinary course of trade" from at least 1989 through the present – a period of 36 years, or 33 years beyond the 3-year prima facie presumption period.  In fact, Plaintiffs are

13

transparent in the fact that neither Maitland nor they have used either of the Marks that nearly four decade period: "He continued to use the Gold Jacket trade dress and Marks, with two similar designs in the 1978 Gold Jackets and the 1979 Gold Jackets-*used from 1979 through 1988* in developing the NFL Alum into a national brand *until 1989* when he stepped down as an advisor and independent contractor heading the NFL Alum."  (D.E. 8, ¶ 51).  To avoid the prima facie presumption of abandonment, Plaintiffs had to have continuously and meaningfully used the Marks through at least 2022.  Instead, Plaintiffs admit that they stopped using the marks **33 to 34 years earlier**, in 1988 or 1989.  Where a presumption of abandonment exists after three years, the fact of abandonment certainly solidifies after 37 years.  Accordingly, Plaintiffs have no claim to the Marks and have no standing to bring this suit.

## E.  THE LANHAM ACT CLAIMS CANNOT STAND BECAUSE PLAINTIFFS FAIL TO ALLEGE LIKELIHOOD OF CONFUSION

"Plaintiff, as the party asserting trademark infringement, bears the burden of proving (1) a valid registered trademark in use prior to the alleged infringing use, and (2) a likelihood of confusion on the part of customers as to the source, affiliation or sponsorship of the parties' products."  *Vampire Family Brands, LLC v. Dracula's Legacy, LLC*, 8:23-CV-1014-TPB-TGW, 2025 WL 2780338, at *2 (M.D. Fla. Sept. 30, 2025).  An alleged infringing use must be "likely to cause confusion, or to cause mistake, or to deceive."  *On Clouds GmbH v. oncloudshoesforall.com*, 24-23061-CIV, 2025 WL 2714462, at *3 (S.D. Fla. Sept. 15, 2025).

"Among the factors [in a likelihood-of-confusion analysis] are 'the type of trademark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent, and actual confusion.'"  *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983).  "Of these factors, the type of mark

14

and the evidence of actual confusion are the most important in this circuit." *Leader Entm't S.A. v. Crom Prods., LLC*, 24-CV-22839, 2025 WL 2586135, at *5 (S.D. Fla. Sept. 8, 2025).

"[T]he two most important circumstantial facts are respectively actual confusion and the strength of the mark…. Strength or 'distinctiveness' describes a mark's ability to allow consumers to identify the source of a good or service." *MC3 Investments LLC v. Local Brand, Inc.*, 661 F. Supp. 3d 1145, 1160 (N.D. Fla. 2023).

"[T]he federal remedy against trademark infringement is not plenary and is only available when the plaintiff can show a likelihood of confusion, mistake or deception arising in the market." *Hydentra HLP Int. Ltd. v. Luchian*, 1:15-CV-22134-UU, 2016 WL 5951808, at *7 (S.D. Fla. June 2, 2016).

Here, Plaintiffs' Lanham Act claims against the Hall of Fame must fail because Plaintiffs cannot make a showing of likelihood of confusion. None of the requisite factors apply because neither Maitland nor Plaintiffs ever used the Marks for any commercial purpose. There is no similarity of product because Plaintiffs are not using the Marks to sell any products. The strength-of-mark factor is inapplicable because Plaintiffs offer no good or service from which consumers could be confused as to their source. And there can be no evidence of actual confusion, identification of retail outlets and purchasers, or similarity of advertising media used because Plaintiffs are not offering or advertising any goods or services that compete with those of the Defendants. In short, Plaintiffs cannot show a likelihood of confusion "in the market" because they are not market participants.

### F.  IF THE COURT WERE TO DISPOSE OF THE LANHAM ACT CLAIMS, THE STATE LAW CLAIMS MUST ALSO BE DISMISSED

As this District has ruled, "[t]he analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act." *Louis Vuitton Malletier v. 14497614*, 24-22652-CIV, 2025 WL 2720236, at *4 (S.D. Fla. Sept. 21, 2025); *Chanel, Inc. v. Iphonecasehub.com*, 25-61241-CIV, 2025 WL 2779875, at *4 (S.D. Fla. Sept. 30, 2025) ("Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida.").

In addition to the Lanham Act claims, Plaintiffs also assert causes of action for deceptive and unfair trade practices under Fla. Stat. § 501.201, *et seq.*  Accordingly, if the Court's review of Plaintiffs' Amended Complaint results in the dismissal of the Lanham Act claims, for the exact same reasons, the Court should dismiss the state law claims asserted against the Hall of Fame.

### G.  PLAINTIFFS' AMENDED COMPLAINT IS STILL A SHOTGUN PLEADING THAT MUST BE DISMISSED WITH PREJUDICE

"A complaint is a shotgun pleading if it contains pervasive conclusory and immaterial facts not obviously connected to a specific claim or asserts multiple claims without specifying who is responsible or which persons the claim is brought against. [ ] A shotgun pleading makes it virtually impossible to know which allegations of fact are intended to support which claims for relief." *Coffey v. Southstar Development Co.*, 2:25-CV-812-JES-NPM, 2025 WL 2896965, at *1 (M.D. Fla. Oct. 10, 2025).  A complaint also constitutes a shotgun pleading if it "attempts to fit multiple distinct theories of liability into [a] single… count."  *Masse v. MSC Cruises, S.A.*, 24-CV-61121, 2025 WL 2896177, at *5 (S.D. Fla. Oct. 10, 2025).

"[T]his Court has condemned the incorporation of preceding paragraphs where a complaint 'contains several counts, each one incorporating by reference the allegations of its predecessors [i.e., predecessor counts], leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015).

"The Eleventh Circuit has unequivocally instructed that shotgun pleadings are "altogether unacceptable."" *Morgan Glob., PLLC v. Croskey Law, PLLC*, 3:25-CV-491-MMH-MCR, 2025 WL 1580799, at *1 (M.D. Fla. June 4, 2025).

"The court cannot simply "fill in the blanks" to state a claim, and "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8." *Duro Beam, LLC v. Manning*, 24-CV-81550-WPD/BER, 2025 WL 2416413, at *2 (S.D. Fla. Aug. 21, 2025).

As this District recently ruled, "[w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case **with prejudice** on non-merits shotgun pleading grounds." *Duro Beam,* 2025 WL 2416413, at *2.

Plaintiffs' 88-page Amended Complaint exemplifies a shotgun pleading.  First, Counts III, VII and IX against the Hall of Fame incorporate a total of 78 paragraphs of factual allegations – Paragraphs 1–55, 91–104, 138–145, and 164–168.  (D.E. 8, ¶¶ 138, 164, 186).  Yet many of those paragraphs are irrelevant to the claims against the Hall of Fame.  For instance, Paragraphs 6 – 8 recount the history of Defendant NFL Alum.  Paragraphs 12 – 20 recount the work that Maitland allegedly for Defendant NFL Alum.  In line with the *Coffey* court's definition of a shotgun pleading, Paragraph 21 attempts to lump all of the Defendants together "without specifying who

17

is responsible" by alleging that "Defendants have individually and collaboratively tried to erase Vic's name and place in the great game of football, his written and confirmed legacy in NFL history."  However, every one of the multitude of factual contentions in that 30-line paragraph only relates to Defendant NFL Alum.  Paragraphs 33–34 enumerate Maitland's negotiations with Defendant Haggar.  Paragraphs 41–43 discuss Maitland's meetings with Pete Rozelle and William Ray, both then-officers of Defendant NFL.  And none of the 78 paragraphs explain how Plaintiffs own the Marks or how the Hall of Fame is infringing on them because none of them includes allegations of any commercial operation against whom the Defendants are wrongfully competing or any commercial use of the Marks on whom the Defendants' use of the Marks creates consumer confusion.

As they relate to the Hall of Fame, all of the incorporated-by-reference allegations collectively constitute pervasive immaterial facts that this Circuit and this District condemn. Plaintiffs wrongfully expect the Court to sift through all 78 paragraphs to fill in the blanks in order to construct a proper pleading for them.  This pleading is impermissible.

This Court instructed that "Plaintiffs shall have **one** opportunity to correct the pleading deficiencies identified in this Order….  Plaintiffs must ensure that the entirety of their filing is compliant with the Federal Rules and this Court's Local Rules."  (D.E. 4, p. 3 (emphasis in original)).  Plaintiffs failed to ensure that the entirety of their Amended Complaint is in full compliance.  The Amended Complaint should be dismissed with prejudice.

## IV.   <u>CONCLUSION</u>

Plaintiffs' Amended Complaint is dispositively defective.  Plaintiffs commenced this action at least 32 years past the permissible filing period and have no excuse for the delay, to the Hall of Fame's prejudice.  Plaintiffs have waited so long that key witnesses have already died.

Plaintiffs have also never used the subject Marks in commerce for any business or product of their own, rendering them either with no intellectual property rights or to have abandoned any rights they may have acquired.  For the same reason, Plaintiffs cannot satisfy an essential element of their claims against the Hall of Fame – likelihood of confusion – because Plaintiffs have no business or product with which the Defendants' use could possibly cause confusion.

Since the same tests and rules of Plaintiffs' Lanham Act claims apply with equal force to their state law claims, if the Court dismisses the Lanham Claims, it should dismiss the action entirely against the Hall of Fame.

Lastly, Plaintiffs failed to heed the pronouncement of this Court and correct their shotgun pleading.  The vastly increased page count of the Amended Complaint has resulted in significantly more contentions that are irrelevant to the claims against the Hall of Fame, and the conclusory allegations throughout the pleading continue to fail to specify which Defendant committed which tortious act.  The Court gave Plaintiffs one chance to correct the Complaint.  Pursuant to this District's rule, the Amended Complaint should be dismissed with prejudice.

WHEREFORE, Defendant National Football Museum Inc. d/b/a Pro Football Hall of Fame respectfully requests that the Court enter an order dismissing Plaintiffs' Amended Complaint herein *with prejudice* for the reasons stated above, together with attorney's fees and costs associated with having to bring the instant Motion, and all other relief deemed just and proper.

Dated: October 14, 2025

Respectfully submitted,

**LITCHFIELD CAVO LLP**

*/s/ Mark M. DelRosario*
Mark M. DelRosario
Admitted *pro hac vice*
W. Robert Keller

19

Florida Bar No. 0127150
4200 W. Cypress St., Suite 450
Tampa, FL 33607
Office: 813-289-0690
Fax: 813-289-0692
Email: delrosario@litchfieldcavo.com,
keller@litchfieldcavo.com

*Attorneys for Defendant National Football Museum Inc. d/b/a Pro Football Hall of Fame*

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that a true and correct copy of the above and foregoing was e-filed this 14th day of October, 2025, and served via electronic mail to the following:

| | |
|---|---|
| Chusid, Katz & Sposato, LLP<br>Mitchel Chusid, Esq.<br>Jordan R. Chusid, Esq.<br>5850 Coral Ridge Drive<br>Suite 201<br>Coral Springs, Florida 33076<br>mchusid@cksattorneys.com<br>jchusid@cksattorneys.com<br>*Attorney for Plaintiff* | Hilgers Graben PLLC<br>Alec Huff Schultz, Esq.<br>1221 Brickell Avenue<br>Suite 900<br>Miami, FL 33131<br>aschultz@hilgersgraben.com<br>*Attorneys for NFL Properties, LLC* |
| Lott and Fischer, PL<br>Noah Hamilton Rashkind, Esq.<br>255 Aragon Avenue<br>Third Floor<br>Coral Gabels, FL 33134<br>nrashkind@lottfischer.com<br>*Attorneys for Defendant, Haggar Clothing Co*<br>Baker Botts, L.L.P.<br>Julie Beth Albert, Esq.<br>30 Rockerfeller Plaza<br>New York, NY 10112<br>Julie.albert@bakerbotts.com<br>*Attorneys for Defendant, Haggar Clothing Co.* | Millennial Law<br>Zachary P. Hyman, Esq.<br>320 SE 11st Str.<br>Fort Lauderdale, FL 33316<br>zach@millenniallaw.com<br>jessica@millenniallaw.com<br>veronica@millenniallaw.com<br>*Attorneys for National Football League Alumni, Inc.* |
| Jensen Law Firm, LLC<br>Christian Jensen, Esq.<br>233 Mount Airy Road<br>Suite 133<br>Basking Ridge, NJ 07920<br>christian@jensenfirm.com<br>*Co-counsel for National Football League Alumni, Inc.* | |

                */s/Mark M. DelRosario*_____
                Attorney