UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

KATHERINE M. LASSEN AND JAMES  CASE NO. 25-80981-CV-MIDDLEBROOKS
V. MAITLAND, AS PERSONAL
REPRESENTATIVES OF THE ESTATE
OF VICTOR I. MAITLAND,

  Plaintiffs,

vs.

NFL PROPERTIES LLC, NATIONAL
FOOTBALL LEAGUE, NATIONAL FOOTBALL
LEAGUE ALUMNI, INC., NATIONAL FOOTBALL
MUSEUM INC. d/b/a PRO FOOTBALL HALL
OF FAME, AND HAGGAR CLOTHING CO.,

  Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS, NFL PROPERTIES LLC AND NATIONAL FOOTBALL LEAGUE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION**

  Plaintiffs, Katherine M. Lassen ("Kathy") and James V. Maitland ("Jim"), as Personal Representatives of the Estate of Victor I. Maitland, Deceased (collectively, "Plaintiffs"), by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 8 and 12 (b)(6), submit this Response in Opposition to Defendants, NFL Properties LLC ("NFLP") and National Football League's ("NFL") (collectively, NFLP and NFL will be referred to as the "NFL Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint (the "AC") alleging that the AC is: (1) an improper shotgun pleading under Rule 8; and (2) fails to state a cause of action under Rule 12(b)(6) (the "MTD").  [ECF No. 37].

1

## I. <u>INTRODUCTION AND RELEVANT FACTUAL BACKGROUND</u>

Much like they chose to ignore Victor I. Maitland's ("Vic") existence, his personal investment of significant time and more than $1 million dollars, and his first use of the Marks in commerce, here the NFL Defendants now assert that the AC [ECF No. 8] does not allege the elements needed for trademark infringement and Florida's Deceptive and Unfair Practices' ("FDUTPA") claims.  In spite of the NFL Defendants' feigned suggestion, even a cursory review of the AC reveals that all the essential elements needed for these causes of action have been properly pled.

This case presents a straightforward, continuous, and ongoing story of trademark infringement by the NFL "Goliaths" against Vic and his family, the "Davids". At this motion to dismiss stage, when this Honorable Court construes the allegations in the AC in the light most favorable to the Plaintiffs, it is respectfully submitted that the MTD should summarily be denied.

Although the NFL Defendants posit that Vic did not personally own or use the Marks, the AC alleges quite the opposite. On its face, the AC sets forth the factual bases for: (1) Vic's creations and his personal and first use of the trademarks and trade dress in commerce (ECF No. 8 at ¶¶ 1, 8, 10, 11), including: (a) Vic's original and revised logos and shield emblems for the NFL Alumni, Inc. ("NFLA") (the "NFL Alum Logos") *Id*.; *see also* ¶¶ 14-17; (b) Vic's design and first use of the "Gold Jacket" in commerce  *Id*. at ¶¶ 14; 17-19; and (c) Vic's creations and his personal and first use of "The NFL Alumni Charity Golf Tour"; the charitable organization known

as "Caring for Kids"; the "NFL Alumni Player of the Year"; the "NFL Alumni Player of the Year Awards Dinner"; and "The Order of The Leather Helmet" *Id*. at ¶¶ 1, 10, 21. In addition, the AC details and illustrates: (1) Vic's in person meetings with Pete Rozzzelle in May 1978 and on July 27-30,1978 during the Pro Football Hall of Fame ("PFHOF") Enshrinement Week in Canton, OH. *Id*. at ¶¶ 41-42; and (2) the NFL's approval of Vic's new NFL Alum Logo, including the NFL's April 4, 1979 letter to Vic confirming that, "…***you*** have our go-ahead on ***your new logo***". *Id*. at ¶ 43.  Thus, the AC plainly and plausibly alleges that Vic personally owned these and the other Marks.

In their MTD, the NFL Defendants aver that the AC "does not plausibly allege that Mr. Maitland ever ***personally*** offered goods and services using the marks…. The allegations of the FAC make clear that it was the NFL Alum who used of the marks in commerce …." [ECF No. 37 p 13 of 25 at ¶1][1].  Contrarily, the AC expressly alleges that the Marks were Vic's, and not the NFLA's creations, which he first used for goods and services in commerce as: he was never employed by the NFLA; he was self-employed as an advisor and independent contractor for the NFLA from 1977 to 1988; the NFLA did not control or have the right to control Vic's design and use of the Marks for goods and services; and he devoted a significant amount of his own time,

---

[1] Notably, and clearly from the other side of their mouths', the NFL Defendants later claim that the AC fails to allege the Lanham Act's requisite "confusion" because the AC does not allege consumer confusion in "tangible goods and services" created by the NFL Defendants' conduct. [ECF No. 37, p.19 of 25 at ¶2]. However, it is undeniable that the AC properly pleads actionable consumer confusion under the Lanham Act as the NFL Defendants adopted their own versions of the Marks that were the same, or confusingly similar to Vic's Marks, such that consumers buying their products and using their services were likely to confuse the two. (ECF No. 8 at ¶¶ 36, 131,133).

spent more than one million dollars of his own money, and was merely "paid" a token salary of a dollar-a-year. (ECF No. 8 at ¶¶ 11, 12, 51).[2]  The AC likewise alleges that, "[A]t no time were the Defendants assigned any of the Intellectual Property rights Vic owned in the Marks which he used in commerce beginning in 1977." *Id.* at ¶¶ 11,59,75,76, 90,104.

Faced with Plaintiffs' well chronicled and powerful case on the merits, the NFL Defendants also moved to dismiss the AC based upon purported affirmative defenses in an attempt to obfuscate the record, improperly delay discovery, and dodge liability. Here, the MTD claims that the AC is a shotgun pleading[3], and that it is "clear on the face of the AC" that dismissal is warranted because of laches, improper delay, and abandonment. Simply stated, the MTD ignores the plain allegations in the AC that: (1) at the time of the 2012 Gold Jacket ceremonies, the latest iteration, Vic was ninety-one years old and lacked the mental capacity to protect his Marks by researching the true nature of NFL Defendants' infringement on the Marks. Vic's inability to police and make informed decisions on protection of his marks continued until he passed away when he was ninety-eight years old (ECF No. 8 at ¶¶ 46, 116); (2) the NFL Defendants' misappropriations of the Marks are

---

[2] While the NFL Defendants suggest that these allegations are a "red herring", they do not dispute that the AC does, in fact, contain these allegations. [ECF No. 37, p.12 of 25 at ¶2]. Any determination of whether these allegations are a "red herring" or a "Chekhov's Gun" by necessity involves factual considerations which cannot be determined at this motion to dismiss stage.

[3] As discussed in detail *infra*, the AC **Error! Main Document Only.**is not a shotgun pleading as it articulates Plaintiffs' claims with sufficient clarity to allow the NFL Defendants to frame a responsive pleading. *See,* **Error! Main Document Only.***Woodley v. Royal Caribbean Cruises, LTD,* 472 F. Supp. 3d 1194 (S.D. Fla. 2020); *see also*, *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 n.2 (S.D. Fla. 2012); *quoting Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016).

ongoing and continuous activities occurring each and every year, including the events culminating in the 2025 HOF Enshrinement which occurred on August 2, 2025 in Canton, OH. *Id.* at ¶¶ 1, 74, 89, 103, 109, 110; (3) Vic, and later his children and grandchildren, did not inexcusably delay in asserting their claims, based upon the NFL Defendants' concealment and deception in their misappropriation of the Marks by: (a) entering into numerous secret trust agreements by which their ownership and use of the Marks, identified as the "Trust Res," was kept "Confidential"[4]; (b) several failed and abandoned attempts by the NFL Defendants and NFLA to trademark the NFLA name and Vic's NFL Alum Logos in which both entities claimed ownership in and objected to the other entities' trademark applications; and (c) concealing their misappropriations by pretending not to know who Vic was during phone calls and emails from 2023 to 2025 from Vic's family members inquiring about Vic's Intellectual Property Rights in the Marks and any misappropriations which may have occurred. *Id.* at ¶¶ 47, 55, 59, 75, 76, 90.

---

[4] The AC plainly alleges, among other things, that: the NFL Defendants and NFLA entered into a Deed of Trust Trusteeship (the "1993 Logo Trust Agreement") by which legal title in the NFLA name and Vic's NFL Alum Logos (collectively, the "Alum Marks") were wrongfully assigned to NFLA and the NFL as the "Trust Res." *Id.* at ¶ 59; under the 1993 Logo Trust Agreement, the NFLA was given a limited license to use the Alum Marks, as the NFL and NFLP exercised control over and placed multiple restrictions on NFLA's use of the Alum Marks. *Id.* at ¶¶ 3 a) i), ii) iii) and c); 62; the 1993 Logo Trust Agreement was renegotiated, and in 1996 an Amended Restated Deed of Trust and Agreement was agreed upon by the NFL, NFLP and NFLA (the "Amended Logo Trust Agreement"); subsequently, there were several amendments to the Amended Logo Trust Agreement, and on January 29, 2013, the NFL, NFLP, and NFLA agreed to a Second Amended and Restated Deed of Trust and Agreement (the "Second Amended Logo Trust Agreement") by which the "Trust Res" was defined as: the "Commercial Marks" including the word mark "Pro Legends" and the Pro Legends logo and the "Historic Marks" which were designated as the NFLA and the NFLA Logo. *Id.* at ¶¶ 66-67.

In simple terms, the NFL Defendants' arguments are nothing more than thinly veiled and purported affirmative defenses seeking dismissal with prejudice by asking the Court to: (1) ignore well established  Rule 8 and 12(b)(6) standards and precedent; as well as (2) improperly construe the factual allegations in the AC in a light most favorable to the NFL Defendants, and not the Plaintiffs. The NFL Defendants cannot reasonably dispute that resolution of these issues requires factual inquiries which are not cognizable considerations at this motion to dismiss stage. Thus, respectfully, the Court should deny the NFL Defendants' MTD in its entirety.

## II. <u>MEMORANDUM OF LAW</u>

### A. *Legal Standards Under Rules 8(a)(2) and 12(b)(6).*

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To "survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Twombly*, 550 U.S. at 570). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

6

me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (*citing SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

As detailed *infra,* the NFL Defendants affirmative defenses of laches, improper delay, abandonment, and Florida's statute of limitations under FDUTPA are fact intensive defenses, thereby making them an "unsuitable basis for dismissal at the pleading stage." *See, Newell v. Celebrity Cruises, Inc.*, No. 18-20743-CIV, 2021 WL 12218402 (S.D. Fla. Nov. 23, 2021). In denying Defendants' Joint Motion to Dismiss, the *Newell* court explained that, "[B]ecause the Rule 12(b)(6) inquiry focuses on the allegations of the complaint, and '[g]iven the fact sensitive nature of a laches inquiry, courts are generally reticent to 'bar claims under a laches defense' when ruling on a motion to dismiss." 2021 WL 12218402 at *4, citing *Motley v. Taylor*, 451 F. Supp. 3d 1251, 1276 (M.D. Ala. 2020) (alteration added; citation and quotation marks omitted); *see also United States v. 1010 N. 30th Rd., Hollywood, Fla. 33021*, No. 20-cv-60622, 2020 WL 6875749, at *9 (S.D. Fla. Oct. 22, 2020) ("A laches analysis requires a fact-intensive inquiry which the Court finds inappropriate to consider at the motion-to-dismiss stage of this litigation." (alteration adopted; citation and quotation marks omitted)).

The court in *Newell* further explained that:

In sum, because the Court "lacks the *evidence* necessary to decide the issue [,]" Defendants' motion to dismiss Plaintiff's claim under the doctrine of laches is denied.

7

> *Rotor Blade, LLC v. Signature Util. Servs*., No. 2:21-cv-00190, 2021 WL  2581280, at *
> 10 (N.D. Ala. June 23, 2021) (alteration and emphasis added); *see also Henriquez*, 2021
> WL 4465986, at *4 ("While [the defendant] may again invoke laches later in this case,
> his current showing is neither a basis not to reopen this case nor a reason for dismissal."
> (alteration added)).

*Newell,* 2021 WL 12218402 at *4.

In short, even if applicable (which Plaintiffs assert that they are not), a laches, improper

delay, and abandonment /statute of limitations analysis in this litigation would be inappropriate at

this time, and the NFL Defendants' MTD the AC as "time-barred" should also be denied.

### B. The AC is not a Shotgun Pleading as it Articulates Plaintiffs' Claims with Sufficient Clarity to Allow the NFL Defendants to Frame a Responsive Pleading.

The NFL Defendants aver that the AC is an impermissible shotgun pleading because:

(1) "…it (the AC) improperly incorporates 75 or more paragraphs into each of the counts brought

against the NFL Defendants". [ECF No. 37, p.11 of 25 at ¶2]; and (2) "…the allegations in these

newly added paragraphs fail to flesh out the counts against these two defendants….the allegations

in these paragraphs do not identify which of the asserted marks were purportedly infringed upon

by the NFL Defendants, the allegedly infringing goods or services , or how the NFL Defendants'

actions caused confusion as to source or sponsorship…"; [ECF No. 37, p.9 -10 of 25 at ¶3 ].

The pleading requirements of the Federal Rules of Civil Procedure require that a complaint

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*,

550 U.S. at 555. The allegations in a complaint "must be simple, concise, and direct." Fed. R. Civ.

P. 8(d)(1).  A "shotgun pleading"—one in which "it is virtually impossible to know which

allegations of fact are intended to support which claim(s) for relief"—does not comply with the

standards of Rules 8(a) and 10(b). *Woodley,* 472 F. Supp. 3d at 1201, citing, *Anderson v. Dist. Bd.*

*of Trs. of Cent. Fla. Cmty. Coll.* 77 F.3d 364, 366 (11th Cir. 1996); *see also, Magluta v. Samples*,

256 F.3d 1282, 1284 (11th Cir. 2001).

      In commenting upon what constitutes a shotgun pleading, the Court in *Woodley*

explained that The Eleventh Circuit has described impermissible shotgun pleadings at length:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citation omitted). 'The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.' *Id.* at 1323.

*Woodley,* 472 F. Supp. 3d at 1202.

      Here, the AC does not fall within any of the prohibited *Woodley* categories and does not

incorporate the allegations of other counts into each cause of action. *Id*. Rather, in clearly organized

headings and sub-headings, the AC incorporates the "**FACTUAL ALLEGATIONS COMMON**

**TO ALL COUNTS",** paragraphs 1-55, into each of the counts and then "fleshes out" the specific

facts as to the "***NFLP and NFL's Involvement in the Infringements of the Marks"***, paragraphs

56 to 75, which detail the allegations of each count against the NFL Defendants. (ECF No. 8 at ¶¶ 1-55; 56-75).

Further, "[t]he allegations of each count are not rolled into every successive count.... [T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.* at 1324. The incorporation of all factual allegations into each count has not made it "virtually impossible" for the NFL Defendants to determine which facts apply to which counts. In fact, the NFL Defendants do not argue that they had any difficulty in discerning which facts applied to which count, and its distinct arguments to dismiss each count confirm that there was no such difficulty.[5] *See Anderson*, 77 F.3d at 366.

Here, the MTD should be denied on this ground as the AC is sufficiently clear as to specific allegations against the NFL Defendants to permit them to frame their responsive pleading. *See, Green,* 614 F. Supp.3d at 1257; *Woodley,* 472 F. Supp. 3d at 1202 citing *Weiland v. Palm Beach Cty Sheriff's Office*, 792 F. 3d 1313, 1321-1323 (11th Cir. 2015); *see also*, *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 n.2 (S.D. Fla. 2012); *quoting Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016).

### C.  The AC Plausibly Pleads a Prima Facie Claim for Trademark Infringement.

To prevail on a trademark infringement claim, a party must show that it has rights in the

---

[5] The NFL Defendants fall short again on their claim that the AC does not specify which of the Marks they misappropriated. Not only does the AC set out the NFL Defendants' participation in the misappropriations, it also references and attaches the various trust agreements in which these Defendants are parties and specifies the nature of their use of the Marks. *See* fn 4 above.

mark and that the opposing party "adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1130–31 (11th Cir. 2018) (quoted authority omitted); *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1334 (11th Cir. 1996).

Rights arise from the use of a mark in commerce. *Hana Fin., Inc. v. Hana Ban*k, 574 U.S. 418, 419 (2015); *see also  Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011) (emphasizing the "bedrock principle of trademark law" that a mark can identify and distinguish only a single commercial source). By letting the public know who is responsible for a good or service, a mark benefits "consumers and producers alike." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 143 S. Ct. 1578, 1583 (2023); *see also Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011). The mark "enables customers to select the goods and services that they wish to purchase, as well as those they want to avoid." *Id.* (internal quotation marks and quoted authority omitted). *Crystal Ent.*, 643 F.3d at 1321 ("Common-law trademark rights are appropriated only through actual prior use in commerce." (internal quotation marks and quoted authority omitted). Those rights "are determined by the date of the mark's first use in commerce"; the party who first used a mark in commerce has priority over others. *Hana Fin.*, 574 U.S. at 419*; see also Commodores,* 879 F.3d at 1131–32 ("To acquire common-law rights to a trademark, a party must have demonstrated prior use of the mark in commerce.").

In discussing the first use of the common law trademark in the name, "The Commodores", the *Commodores* court specifically noted as follows:

Common-law trademark rights are initially acquired through priority of appropriation. <u>See, e.g.</u>, <u>Columbia Mill Co. v. Alcorn</u>, 150 U.S. 460, 463–64, 14 S.Ct. 151, 37 L.Ed. 1144 (1893) ("[T]he exclusive right to the use of the mark or device claimed as a trademark is founded on priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like articles of production."). To acquire common-law rights to a trademark, a party must have demonstrated prior use of the mark in commerce. <u>See</u> <u>Crystal Entertainment & Filmworks, Inc. v. Jurado</u>, 643 F.3d 1313, 1321 (11th Cir. 2011) ("Common-law trademark rights are appropriated only through actual prior use in commerce." (quotations omitted)). Prior use, in turn, is established with "[e]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." <u>Id.</u> (quotations omitted). We have concluded this association was present when "the distribution of the mark was widespread because the mark was accessible to anyone with access to the Internet"; when "the evidence established that members of the targeted public actually associated the mark with the product to which it was affixed"; when "the mark served to identify the source of the product"; and **1132** when "other potential users of the mark had notice that the mark was in use in connection with the product." <u>Id.</u> (quotations and alterations omitted).

*Commodores,* 879 F.3d at 1131–32.

In this regard, despite the NFL Defendants' claims, the AC expressly and plausibly alleges both of the *Commodores* factors required for a common law infringement claim. *Id.* In fact, courts have regularly found allegations of ownership like those pled in the AC sufficient at the pleading stage. *See, e.g., PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1112 (S.D. Fla. 2007) (plaintiff sufficiently pled ownership of marks ); *Malicious Women Candle Co., LLC v. Cox*, No. 6:20-CV-2013, 2021 U.S. Dist. LEXIS 70959, at *5 (M.D. Fla. Feb. 3, 2021) (denying MTD where plaintiff "alleged it either holds or is the sole authorized licensee of the ... Marks").

As to Vic's ownership rights in the Marks, the AC alleges that Vic personally owned and first used the common-law Marks in commerce in 1977 for goods and services, "…including his continuous use of the two NFL Alum Logos, the 1978 NFL Alum shield with stars and the 1979 NFL Alum shield without stars, by displaying them in all the NFL Alum promotional materials, advertisements memberships, sponsorships and other lucrative agreements to raise funds to help support the NFL Alum and its members". (ECF No. 8 at ¶¶ 15, 125, 133).

In addition, the MTD's assertion that the AC fails to allege the requisite likelihood of confusion, [ECF No. 37, p 11-14 of 25], much like the confusion which resulted from defendant's use of the common law trademarks in the name "The Commodores", the AC satisfies the second *Commodores* prong. *Id.* The AC further alleges that the NFL Defendants adopted a mark or name that was the same, or confusingly similar to products first sold using Vic's Marks, and are using these mimicked marks on goods and services they offer for sale thus likely causing consumer confusion as to the origin, sponsorship, or approval of the goods or services under Section 43(a) of the Lanham Act, 15 U.S.C. 1125 § (a)(1). In fact, the AC alleges that the NFL Defendants "…used and continue to use the mimicked and copied versions of the Marks to promote their brands for goods, services, and events that were and are identical or closely related to the Marks, including programs, events, awards, goods and services Vic previously offered and launched under the original and real Marks." *Id*. at ¶¶ 25-27. *See, Commodores,* 879 F.3d at 1131–32. Further, the AC alleges that the NFL Defendants' goods and services using the mimicked and copied Marks are confusingly similar to Vic's goods and services using the Marks, such that consumers are and were likely to confuse the two. *See, e.g.* (ECF No. 8 at ¶¶ 25, 28, 37, 39).

13

In this Circuit, determining whether someone used a mark in commerce in a manner sufficiently public to establish ownership is generally a factual question. *See, Direct Niche LLC v. Via Varejo S/A*, 898 F.3d 1144, 1150 (11th Cir, 2018). In discussing the factual nature of whether a common law mark was used in commerce, the *Direct Niche* court noted:

> To the extent Direct Niche challenges the district court's finding that Via Varejo used the mark in commerce in a manner sufficiently public to establish ownership, this is a factual determination, reviewed for clear error. *See Crystal Entm't & Filmworks, Inc.*, 643 F. 3d at 1321. Use adequate to establish appropriation of service mark rights is decided on the facts of each case, upon consideration of the "totality of the circumstances." *See Planetary Motion, Inc.*, 261 F. 3d at 1195; *Crystal Entm't & Filmworks*, 643 F. 3d at 1321. This requires an inquiry into the "activities surrounding the prior use of the mark" to determine whether public association or notice is present. *See Planetary Motion, Inc.*, 261 F. 3d at 1195.

*Direct Niche*, 898 F.3d at 1150.

Here too, the factual nature surrounding Vic's first use of the common law Marks in commerce requires a factual determination which, respectfully, goes beyond this Court's scope of consideration on a motion to dismiss.[6]

**D.    *The AC Plausibly Pleads a Prima Facie Claim Under FDUTPA.***

Much like Plaintiffs' trademark infringement claims, the AC properly and plausibly sets forth a FDUTPA claim as it is premised upon the same underlying facts. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

---

[6] Notably, the MTD's reliance upon *Compton v. Fifth Avenue Association, Inc*., 7 F. Supp. 2d 1328 (M.D. Fla. 1998) and *La. Ath. Down on the Bayou, L.L.C. v. Bayou Bowl Ass'n*, No. 11-303-BAJ-SCR, 2013 U. S. Dist. LEXIS 68582, at *2, 9, 24-26, 2013 WL 2102354 (M.D. La. May 14, 2013) is misplaced and unavailing. In both matters, the court was presented with Rule 56 motions for summary judgment, unlike here where this Court is being asked to determine the outcome of Rule 12(b)(6) motions to dismiss at the pleading stage.

practices in the conduct of any trade or commerce." *See*, *Carriuolo v. General Motors Co*., 823 F. 3d 977 (11th Cir. 2016); Fla. Stat. § 501.204(1). The elements comprising a consumer claim for damages under FDUTP are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. , *Carriuolo,* 823 F. 3d at 983 citing *City First Mortg. Corp. v. Barton,* 988 So.2d 82, 86 (Fla.Dist.Ct.App.2008). For the reasons discussed above, the AC appropriately pleads that each of these three prongs were satisfied. Thus , the AC sufficiently alleges a FDUTPA claim against the NFL Defendants. *See, e.g.* (ECF No. 8 at ¶¶ 174-179).

**E.**   ***The NFL Defendants' Claims of Laches, Improper Delay, and Abandonment are Factual Affirmative Defenses Not Cognizable Under Rule 12(b)(6).***

The NFL Defendants' attempt to dismiss the AC based on the purported existence of potential affirmative defenses once again asks this Court to ignore well established precedent as well as to improperly construe the factual allegations in the AC in a light most favorable to the NFL Defendants. However, it is axiomatic that "[a] plaintiff is not required to anticipate and negate an affirmative defense in the complaint." *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1316 (M.D. Fla. 2013) (*citing La Grasta* at 845); *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir.1993) ("the existence of an affirmative defense [generally] will not support a rule 12(b)(6) motion to dismiss for failure to state a claim."); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F. 3d 1212, 1220 n. 5 (11th Cir.1999) (defendants' waiver argument does not provide basis to dismiss complaint because waiver is an affirmative defense); *In re Am. Online, Inc.*, 168 F.Supp.2d 1359, 1367 (S.D.Fla.2001) (breach of contract claim could not be dismissed on basis of affirmative defense).

To assert the affirmative defense of laches, the NFL Defendants must show Plaintiffs (1) delayed in enforcing their trademark rights, (2) that the delay was not excusable, and (3) that the delay caused undue prejudice. *Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1205 (11th Cir. 1997). " 'Delay' is to be measured from the time at which the plaintiff knows or should know [it] has a provable claim for infringement, which in turn, requires demonstrable likelihood of confusion." *See Id*; 15 U.S.C. § 1114(a) (requiring use of a registered mark "likely to cause confusion, or to cause mistake, or to deceive").

The obligation to affirmatively plead and subsequently prove laches, improper delay, and abandonment as affirmative defenses, lies with the NFL Defendants - not Plaintiffs. *See, Lesti*, 960 F. Supp. 2d at 1316; *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1286-87 (S.D. Fla. 2005) ("burden rests with defendant to affirmatively plead 'any ... matter constituting an avoidance or affirmative defense'" (quoting Fed. R. Civ. P. 8(c)).

With regard to the "strict" burden on a defendant to prove the affirmative defense of abandonment, the Eleventh Circuit explained:

> First, we note that the burden a defendant bears on the affirmative defense of abandonment *is,* in fact, "strict." *See Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1516 (11th Cir.1984); *Citibank,* 724 F.2d at 1545. Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a "stringent," "heavy," or "strict burden of proof." *See e.g., Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486 (5th Cir.1992) ( "stringent standard of proof"); *Lipton Indus., Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 1031, 213 U.S.P.Q. 185, 191 (C.C.P.A.1982) ("heavy burden"); *Seidelmann Yachts, Inc. v. Pace Yacht Corp.,* 14 U.S.P.Q.2d 1497, 1501 (D.Md.1989) ("Because abandonment constitutes a forfeiture of a property interest, both non-use and intent not to resume use must be strictly proved.") *aff'd* 13 U.S.P.Q.2d 2025 (4th Cir.1990).

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.,* 304 F. 3d 1167 (11th Cir. 2002).

Abandonment, much like laches and unreasonable delay, is a question of fact beyond consideration in a motion to dismiss. *Id*. at 1174, citing *On–Line Careline, Inc. v. America Online, Inc.,* 229 F.3d 1080, 1087 (Fed.Cir.2000) ( "Abandonment is a question of fact") and *Rivard v. Linville,* 133 F.3d 1446, 1449 (Fed.Cir.1998) (same).

In short, the determination of delay, and whether the delay was not excusable, rely heavily upon a factual determination as to when Plaintiffs knew or should have known of the misappropriation. Because the NFL Defendants cannot demonstrate—on the face of the AC—when Plaintiffs knew or should have known that they held a provable claim for infringement, at this pleading stage, the NFL Defendants cannot establish the requisite "delay" in their defense of laches.

In addition, whether there was undue prejudice to the NFL Defendants depends on a significant number of factual determinations that are outside of the pleadings. Noticeably absent from the MTD is any mention of the general rule against dismissing claims based on a potential presence of an affirmative defense and/or that the relief the NFL Defendants seek is an exception to that rule. It matters not whether such an omission was purposeful, the mere possibility that laches, improper delay, and abandonment may exist in this case does not provide a basis to dismiss the AC at this pleading stage because of these claimed affirmative defenses. *See, e.g., Tamiami Partners*, 177 F.3d 1212, 1220 n. 5.

17

In addition, the MTD misses the mark as it simply ignores the plain and plausible allegations in the AC supporting Plaintiffs' reasonable justifications for not pursuing the NFL Defendants for misappropriations at an earlier time based upon: (1) Vic's lack of mental capacity because of his advanced age (Vic was ninety-one years old at the time of the use of the 2012 Gold Jackets and he passed away when he was ninety-eight) (ECF No. 8 at ¶¶ 46, 116); (2) the NFL Defendants' ongoing and continuous misappropriations of the Marks occur each and every year, including the most recent events culminating in the 2025 HOF Enshrinement which occurred on August 2, 2025 in Canton, OH. *Id.* at ¶¶ 1, 74, 89, 103, 109, 110; and (3) the NFL Defendants' ongoing and continuous concealment and deception in their misappropriation of the Marks by: (a) numerous secret trust and other contractual agreements keeping their ownership and use of the Marks "Confidential" *see* fn 4 ; (b) several failed and abandoned attempts by the NFL Defendants and NFLA to trademark the NFLA name and Vic's NFL Alum Logos; and (c) in 2023 to 2025, pretending not to know who Vic was during phone calls and emails from Vic's family members *Id.* at ¶¶ 47, 55, 59, 75, 76, 90.

Accordingly, the NFL Defendants' claims that the AC is somehow deficient because laches, improper delay, and abandonment may exist are unfounded and insufficient to support dismissal with prejudice. *See, In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir.1995) ("[F]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").[7]

---

[7] While Plaintiffs acknowledge an exception to the general rule that a plaintiff is not required to plead around affirmative defenses exists, such an exception would clearly not apply

***F.  Plaintiffs' FDUTPA Claim Should Not Be Dismissed Based Upon the Statute of
Limitations.***

The NFL Defendants posit that Plaintiffs' FDUTPA claim is barred by the four-year statute

of limitations under Fla. Stat. § 501.202(2). The three elements of a consumer claim under

FDUPTA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *See*,

*Marrache v. Bacardi U.S.A., Inc*., 17 F.4th 1084, 1097 (11ᵗʰ Cir. 2021) *citing  Carriuolo v. Gen.

Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016); *accord City First Mortg. Corp. v. Barton*, 988

So. 2d 82, 86 (Fla. Dist. Ct. App. 2008).

Under controlling law, the statute of limitations period for FDUTPA begins to run when

the "last element of the claim occurred". *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257,

1263 (M.D. Fla. 2018) (Dalton, J.). The last element of a FDUTPA claim is actual

damages. *See Dolphin LLC v. WCI Cmties., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).

As detailed above, factual disputes exist as to the date on which Plaintiffs "knew or should

have known" that they were damaged by the NFL Defendants' actions.

In addition, the AC plausibly alleges that the NFL Defendants' deceptive and unfair trade

practices are continuous and ongoing each year, including the latest events culminating in the 2025

---

here. Courts in this Circuit and elsewhere have acknowledged that in some cases, a motion to
dismiss may be granted "when 'the allegations of the complaint ... set forth everything necessary
to satisfy the affirmative defense.'" *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th
Cir. 2016)(*quoting United States v. Lewis*, 411 F.3d 838, 842 (7th Cir.2005)); *La Grasta*, 358 F.3d
at 845. But as the Eleventh Circuit cautioned, a motion to dismiss based on an affirmative defense
"... should not be granted where resolution depends either on facts not yet in evidence or on
construing factual ambiguities in the complaint in defendants' favor." *Lesti*, 960 F. Supp. 2d at
1317 (*citing Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir.2003)).

HOF Enshrinement which occurred on August 2, 2025 in Canton, OH.  Even assuming *arguendo* that the Court decides to use August 2, 2025 as the date of the deceptive act, (despite the contrary allegations in the AC), the four-year statute of limitations under FDUTPA does not expire for these deceptive acts until August 2, 2029.

For the foregoing reasons, the NFL Defendants' request that the AC be dismissed with prejudice at the pleading stage because it is untimely, and based upon the affirmative defenses of laches, unreasonable delay, and abandonment, is asking this Court to make factual determinations without the benefit of being presented with record evidence in a Rule 56 summary judgment motion. Plaintiffs respectfully request that the Court deny the MTD as the AC need not anticipate and overcome these factually driven affirmative defenses.

### III. <u>CONCLUSION</u>

Given the foregoing, Plaintiffs respectfully request that this Court deny the NFL Defendants' Motion to be Dismiss this action with prejudice.

### <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that on this <u>**6th**</u> day of November, 2025, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  We also certify that a true and

correct copy of the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF and/or United States Mail (for those parties not on the CM/ECF system).

**CHUSID, KATZ & SPOSATO, LLC**
Attorneys for Plaintiffs
5850 Coral Ridge Drive, Suite 201
Coral Springs, Florida 33076
Tel:(954)340-2200
Fax:(954) 340-2210

By:      */s/Mitchel Chusid*
Mitchel Chusid, Esq.
Florida Bar No.: 879282
mchusid@cksattorneys.com
Jordan R. Chusid, Esq.
Florida Bar No.: 124638
jchusid@cksattorneys.com